The opinion of the court was delivered by
Watkins, J.
This appeal presents the question of title vel non of the minor children and heirs of Mrs; Cornelia Luckett, née Petrovic, deceased wife of Henry P. Luckett, the question being collaterally raised by way of third opposition coupled with an injunction against the executory proceedings of the defendant, in the attempted foreclosure of a special mortgage, which was consented, during her lifetime, by her husband.
In the court below there was judgment in favor of the plaintiff, sustaining and perpetuating the injunction of the under-tutor, and the mortgage company has appealed.
The following is a brief summary of the salient facts about which there seems to be no question or dispute, viz.:
Mrs. Cornelia Luckett was owner by inheritance from her father, Charles A. Petrovic, and her mother, his wife, both deceased, of about eight hundred acres of land, situated in Grant parish, which she sold in 1881 to Lorenzo Smith for forty-six hundred dollars, and of that sum of money and its avails, her husband took possession and converted same to his own use.
On the 14th of February 1884, Henry P. Luckett presented himself *1261 before the clerk of the court and made oath to the fact that be had so received, used and converted the separate funds of his wife, and recognized her legal mortgage upon his real property as securing the restitution thereof — said affidavit being recorded at the time.
On the 8th of January, 1885, said Luckett appeared before a notary public and made, in due form of law, a dation en paiement oí a portion of the property known as the Ashbourn plantation, situated in the parish of Rapides, consisting of about eighteen hundred acres, about five hundred of which are involved in this suit, the aforesaid act being duly recorded in the book of conveyance records for the parish in which it was situated, on the 15th of January, 1885.
On the 22d of October, 1888, Henry P. Luckett executed a special mortgage upon the aforesaid plantation, in favor of the defendant company, to secure the loan of the sum of twenty-two hundred dollars.
On the 20th of October, 1888, just prior to the acceptance by the defendant of the mortgage, Mrs. Luckett executed the following relinquishment under private signature, to-wit:
“ Mrs. Nina Luckett, wife of H. P. Luckett, of Rapides parish, Louisiana, does hereby acknowledge full payment of a certain mortgage given by H. P. Luckett to her, the said Mrs. Nina Luckett; and the Olerk of the District Court of the parish of Rapides, Louisiana, is hereby requested to enter full satisfaction of said mortgage upon the records of his office. _ Said mortgage is dated 12th day of February, 1884, and was given to secure an indebtedness of five thousand dollars and interest, and is recorded in mortgage book CL,’ p. 45 et seq., of the records of Rapides parish, State of Louisiana. This release is made because the Canadian and American Mortgage and Trust Company, Limited, is about to make a loan to H. P. Luckett, and is unwilling to make it unless the fact of the payment of this mortgage be entered of record so as to show the lien of said company will be absolutely the first lien.” This refers to the same consideration as that stated in the affidavit of Henry P. Luckett, which was recorded on the 16th day of February, 1884, in Mortgage Book “ L,” p. 45.
This document was made part of the representation of Henry P. Luckett, upon which the company acted in granting the loan, which was to be secured by his mortgage when accepted; but it contains no mention of the subsequent dation en paiement.
Occasioned by his default, the mortgagee began foreclosure pro *1262 eeedings via executiva in 1891, and caused the mortgaged premises to be seized. ■ This seizure was opposed and enjoined by Mrs. Cornelia Luckett, claiming ownership under the dation.
In answer the mortgage company put her claim at issue by a specific denial of the validity of her title, and a special averment that the dation was “ absolutely null, because the consideration therein named was never received by the husband.”
(The italics are ours.)
On the trial of that case there was judgment in favor of the company. Immediately thereafter time was granted to Luckett, and the executory proceedings were abandoned. Thereafter Mrs. Cornelia Luckett died — in March, 1893 — leaving her minor children as her heirs at law.
In March, 1894, another order of seizure was obtained, and the injunction now under consideration was procured and sale of the property was arrested.
We append the following résumé of the plaintiff’s present claims and pretensions, as it is well stated in the brief of defendant's counsel:
“ In the present case the plaintiffs, after reciting the dation en paiement to their mother, and the cancellation of the legal mortgage of date of October 20, 1888, substantially allege that on or about August, 1891, the said Canadian and American Mortgage and Trust Company, Limited, instituted proceedings to foreclose their mortgage against Henry P. Luckett, and had seized and advertised for sale her land, to pay, in part, said mortgage, when she obtained a writ of injunction restraining said sale of land as above described and asserting the ownership of1 same and the nullity of said mortgage ; whereupon the local agent of said Canadian and American Mortgage and Trust Company, Limited, and her said husband, by persuasion and the use of marital influence, and the said local agent, by threats against her said husband, induced her to withdraw and abandon her said suit, to dismiss her writ of injunction and to sign a document called a compromise, which was filed therein, containing acknowledgments as to the ownership of said property by her said husband, and other untrue acknowledgments and averments, which she signed in error and in ignorance of the fact that she could not bind herself and her property for her husband’s debts in that form and without any consideration whatever received or promised *1263 her, and all of which acts and proceedings petitioners now allege and charge were concocted and gotten up by the then local agent and attorney of the said Canadian and American Mortgage and Trust Company, Limited, to have the said Mrs. Cornelia Luekett bind herself for her husband’s debts, under the disguise of a compromise of a pending lawsuit, the said agent and attorney of the said Mortgage and Trust Company, Limited, and his said principa being then well aware of the justness of her ownership of the aforesaid property, and all of her rights in the premises, as above recited, and of the falsity of the averments and acknowledgments in said written act of compromise, which was prepared by him and is in his handwriting, and which he induced her to sign by threats of legal proceedings against her said husband for including her property in that mortgaged to the said Canadian and American Mortgage and Trust Company, Limited, and which said document she signed under duress and in error of fact and law, and without any consideration whatever, and under the marital influence and coercion of her said husband.”
They urge the nullity of the judgment rendered' in suit No. 3846 and the cancellation of the legal mortgage in favor of Mrs. Luekett. They pray for judgment in conformity with averments of the petitions.
With respect to the defendant’s pleas and answer to this suit counsel’s further statement is as follows, viz.:
“ By exception and answer the defendant plead the former judgment res adjudieata, and averred the absolute nullity of the dation en paiement as being without consideration, and specially denied that any influence was used by the attorneys representing the defendant upon the said Mrs. Cornelia Luekett, to induce her to sign the retraxit or statement, acknowledging the property to belong to her husband, and consenting that judgment should be rendered against her, and averring that it was done voluntarily by her on the advice of her attorneys, against whom these minors do not charge fraud nor want of authority.”
It was upon these issues that the ease went to trial, and judgment was pronounced in favor of the plaintiffs in the court below.
The decision of this case is, by both petition and answer, made to turn upon the effect that is to be attributed to the former suit and judgment, and to the wife’s renunciation, which antedates the loan and mortgage.
*1264 The pith and germ of the plaintiff’s averment are that the husband of their deceased mother, “ by persuasion and the use of marital influence, and the local agent of the defendant, by threats against the said husband, induced her to withdraw and abandon her said suit, to dismiss her writ of injunction, and sign a document called a compromise, which was -filed therein, containing acknowledgments of the ownership of said property by her said husband and other written acknowledgments and averments which she signed in error, and in ignorance of the fact that she could not bind herself or her property for her husband’s debts in that form, and without any consideration whatever received by or promised to her.”
Contra, the defendant’s answers and pleas are (1) res adjudieata; (2) the dation of plaintiff’s mother was without consideration; (3) the absence of any undue influence exercised by the company’s agent in procuring Mrs. Luckett’s renunciation; (4) that plaintiff’s mother, acting under the advice of her own counsel, gave her consent to the compromise of the suit voluntarily and willingly.
It is clear and undenied that Mrs. Luckett, the mother of the plaintiff, was primarily owner of a plantation in Grant parish, the proceeds of which, when sold, passed into the possession and use of her daughter’s husband, Henry P. Luckett. That, recognizing that fact, the latter made an acknowledgment of his indebtedness to his wife and caused the same to be duly recorded, as the law requires, so as to have effect as a legal mortgage, good as to strangers.
That the oath of Luckett places the aggregate amount of the pro - ceeds which he received at five thousand dollars.
That the statement of the dation en paiement is that he is justly and legally indebted to his wife in the sum of forty-six hundred dollars, which is made up of three different items of twenty-five hundred dollars, sixteen hundred dollars and five hundred dollars; and. that, in satisfaction thereof, he gave to her, .as a dation en paiement, five hundred acres of land, with the buildings and improvements thereon, at the valuation of four thousand dollars; anda small tract of woodland adjoining at the valuation of three hundred dollars— ten head of stock cattle and two mares, covering the remaining three hundred dollars, thus squaring their accounts.
That, on the 13th of June, 1883, previously, Henry P. Luckett acquired the entire Ashbourn plantation — a portion of which he gave in payment to his wife — containing eighteen hundred acres, for the *1265 consideration of four thousand dollars, receiving only a quit-claim deed therefor.
The truth of the recitals of these acts is not impeached by other evidence, and, for the purpose of the argument, they may be adopted as established facts.
This was the condition of things at the time Henry P. Luckett commenced negotiations with the mortgage company for a loan of twenty-two hundred dollars, predicated upon a proposed hypothecation of the entire Ashbourne plantation. Finding the wife’s legal mortgage interfered, her relinquishment thereof was procured — her title by elation en paiement having apparently escaped attention.
While the renunciation recites it to be a fact that Mrs. Luckett had received “ full payment ” of her mortgage claim against her husband, the fact is that she did not receive any part thereof; but this statement of the wife is not inconsistent with the truth, because she had received full payment through the instrumentality of the dation.
From the record it appears that no reference whatever is made in the act of mortgage to the defendant of the aforesaid renunciation. Mrs. Luckett did not sign the act making a formal renunciation of her right of mortgage or her right of property. There is no certificate of mortgages appended to the act, and no waiver of the production of such a certificate is found in the act. The mortgage covers and includes the entire Ashbourn plantation, the five hundred acres given to the wife, as well as the nine hundred belonging to the husband.
Counsel for the defendant insists that his client was a stranger to both the husband and the wife; that the husband had a legal right to liquidate the indebtedness of his wife, and that she had a legal right to acknowledge payment and direct the cancellation of her legal mortgage.
And at the same time he insists that the provisions of R. O. C. 129 do not apply, as they refer exclusively to a wife’s renunciation in favor of a third person; and, further, that they do not apply to the cancellation of a wife’s legal mortgage.
The renunciation of Mrs. Luckett was only an act under private signature authorized and signed by her husband out of the presence of the attesting witnesses; and it was neither filed for record nor recorded until three days subsequent to the execution of the mortgage to the defendant.
*1266 The record fails to disclose the cancellation of the wife’s mortgage at all, notwithstanding the relinquishment purports to have been made, “because the Canadian and American Mortgage and Trust Company, Limited, is about to make a loan to H. P. Luekett, and is unwilling to make it unless the fact of payment of this morgtage be entered of record, so as to show the lien of said company will be absolutely the first lien.”
But, for the present, leaving these facts out of view, as well as the question of her title in virtue of the dation en paiement, let us consider whether the renunciation, as such, was good in law, this being the necessary starting point in the controversy.
The general rule of law is that ‘ ‘ inscriptions of mortgage and privileges are erased by the consent of the parties interested and having capacity for that purpose; this consent is to be evidenced by a release, or by a receipt given on the records of the court,” etc. R. C. C. 3371.
But R. C. C.129 imposes the additional requirement that “married women above the age of twenty-one years shall have the right, with the consent of their husbands, by act passed before a notary public, to renounce in favor of third persons their matrimonial, dotal, paraphernal and other rights. The notary public, before receiving the signature of any married woman, shall detail in the act, and explain verbally to said married woman, out of the presence of her husband, the nature of her rights, and of the contract she agrees to.”
This is a new article, first incorporated in the Oode of 1870; and the same phraseology is found repeated in three sections of the Revised Statutes of 1870, viz.: 1717, 2518 and 3985.
The language of that article is general, that married women shall have the right to renounce in favor of third persons, their matrimonial, dotal, paraphernal and other rights, only upon compliance with the conditions therein imposed.
The law-maker has seen fit to impose these conditions and requirements, as a means of deoermining the capacity of a married woman to make a proposed renunciation; and it is the plain duty of this court to see that they have been complied with.
Succession of Montgomery, 44 An. 373, which is cited by the plaintiff’s counsel, seems to be exactly applicable.
The opening statement of the opinion is as follows, viz.:
“ This controversy involves the validity of a wife’s renunciation *1267 of her rights against her husband, and the property mortgaged by him, in favor of a creditor.”
The only question was as to the validity of the wife’s renunciation, which was contained in an authentic act of mortgage, wherein she intervened for the purpose of making the renunciation — the recital being that “ she appears and declares that she renounces unto G. Malin Davis her right of mortgage on said property, and agrees that his mortgage shall take precedence of hers; and she further declares that she has no other mortgage against her husband’s property, recorded or otherwise.”
After quoting R. C. C. 129 the court said:
“A simple reading of the provision forcibly impresses upon the mind that the law permits a renunciation, provided the notary before receiving the signature of the married woman explains to her verbally, out of the presence of her husband, (1) the nature of her rights and that of the contract she agrees to; (2) that he shows that he has done so, by detailing in the act the nature of the double information which he has thus given her, and that the formalities have been observed.
‘1 It is not until after he has so furnished her this information and thus detailed what has occurred that he has the authority to receive her signature.
“A compliance with those requirements is an essential condition precedent for the validity of such renunciations, which is exacted for the protection of married who are inopes eoneilii, in order to shield them as effectually as practicable from marital pressure, intimidation or captation.
“It is nothing but just that they should previously know their rights, just as they are, with precision; and it is for that purpose that the notary is required to inform them, and to show how he has done so, in order that they may not afterward deny that they had full knowledge of those rights, the whole, of course, to occur out of the presence of the husband.
“The proof which the law allows to show that those formalities have been gone through faithfully is the notary’s recital in the act.”
After citing various authorities applicable to similar provisions of law, the opinion concludes thus, viz.:
“ In the instant case it is more than apparent that the renunciation is fatally defective, not only because the notary did not detail *1268 the rights, the double information which is to be given by him to the wife, but also because it does not appear that what transpired, if anything of that kind did, occurred out of the presence of the husband.
“ A failure to have made a recital in the act of those .circumstances implies that the formalities were not fulfilled, and carries the nullity of the renunciation.”
In support of that interpretation of the Art. 129, the following authorities were cited, viz.: Succession of Gremillon, 4 An. 411; Ashford vs. Tibbitts, 11 An. 178; Locke vs. Lafitte, 28 An. 232; Pilcher vs. Schwartz, Id. 494.
The opinion is clear, logical and perfectly conclusive, and it applies, with much greater force, to the renunciation of the plaintiffs' mother. Because it is under private signature. It was signed at the request and in the presence of the husband, alone, and out of the presence even of the attesting witnesses. It was not attached to or made part of the act of mortgage. She did not appear and sign the act of mortgage, nor intervene therein for the purpose of having it recognized and authenticated.
There can be no doubt of the utter invalidity of the document which is relied upon as a renunciation by the plaintiffs’ mother of her right of legal mortgage on the property in controversy.
The next question for our consideration is the title of the plaintiffs’ mother, which she acquired by the dation en paiement from her husband, in satisfaction of her paraphernal claims, and secured by the aforesaid legal mortgage.
The paraphernal indebtedness of the wife being fully established, and her mortgage ascertained to have been in propriore vigore at the date her husband consented the special mortgage in favor of the defendant ; and it having the retroactive effect of a consideration for the dation en paiement — we must look elsewhere for a solution of the present controversy. And the defendant’s counsel points to the former litigation between their client and plaintiffs’ mother, as solving the difficulty — relying on the compromise settlement therein made as an estoppel, and the judgment therein rendered as constituting res adjudicaba.
But, on the other hand, the plaintiffs insist that their mother was, at the time, under the coverture of marriage, and that her mind was operated upon by undue marital influence and coercion which were *1269 exercised by her husband, as well as by the threats of a criminal prosecution against her husband, at the instance of the company— through which instrumentalities she was actuated in consenting to the apparent abandonment of her rights, and the rendition of a judgment against her in said litigation.
The following is the full text of the agreement on which the settlement of said suit and judgment was predicated, viz.:
“A.”
No. 3846. Mrs. Cornelia Luckett vs. Canadian and American Mortgage and Trust Company.}
Twelfth Judicial District Court, Parish of Rapides, State of Louisiana.
Now appears Mrs. Cornelia Luckett, wife, and her husband, Henry P. Luckett, who joins herein for the purpose of authorizing his said wife, who admits that the property claimed in her petition, filed in this injunction suit, is the property of her husband, H. P. Luckett; she moreover withdraws and disclaims any right, title and interest in said property, to-wit: A certain tract of land in the parish of Rapides, La., containing 500 acres of land, with all the buildings thereon, bounded above by lands of Mrs R. L. Luckett, below by lands of J. P. Hickman, and fronting on Red river; and also another tract of woodland adjoining the above tract, bounded north by Landry Baillio, south by lands of Sanford, and east by the first above described lands, and west by lands of the Bertrand plantation, being the identical property described in the dation in payment of Henry P, Luckett, husband to Cornelia Luckett, wife, dated 8th day of January, 1885, and recorded in Conveyance Book H, p. 493, on the 15th day of January, 1885. (Italics ours.) That when she signed the act of release, dated October 20, 1888, and recorded in Mortgage Book N, p. 284, she was then aware that her husband, Henry P. Luckett, was about to mortgage the “Ashborne” plantation, upon which he resides, on the right descending bank of Red river, about twelve miles above Alexandria, La., bounded on the north by Red river, on the south by lands of the estates of Willis Bonner, Wm. L. Sanford and James, on the east by lands of James P. Hickman and on the west by lands of Dr. R. L. Luckett, and he did mortgage the said plantation to the Canadian and American Mortgage Company, the above-described plantation containing 1400 acres of land, and that *1270 she executed her release to her husband in order that her husband might borrow the sum of twenty-two hundred dollars from the aforesaid mortgage company upon aforesaid plantation, as set forth in the act of mortgage executed by him in favor of the Canadian and American Mortgage Company for twenty-two hundred dollars, dated October 22, 1885, and recorded November 5, 1888, in Mortgage Book N, p. 285.
She now appears in open court and moves to dismiss her suit of injunction herein filed, and that the court shall render such judgment as her admissions warrant, and that judgment be rendered in favor of defendants so as to effect a settlement of the difference between the said company and her husband in this particular case. (Italics ours.)
(Signed) Cornelia Luckett.
Authorized by me, H. P. Luckett.
Rapides Parish, La., October 27, 1891.
Witnesses: John C. Ryan, John P. McGhee.
With reference to the influences that operated on the mind of Mrs_ Luckett in the execution of this instrument we have collated the following pertinent statements of the witnesses, and for convenience take the liberty of making extracts from the brief of defendant’s counsel, viz.:
“ R. J. Bowman, one of Mrs. Luckett’s attorneys, on a former trial testified substantially as follows: ‘ I never saw this document marked “A.” Captain White was associated with me in this business. After this injunction suit of Mrs. Luckett was brought, Mr. Daigre came to see me with some documents, consisting of an affidavit among other things, in which Mr. Luckett made an affidavit that this property was his own property; this affidavit was made preparatory to the mortgage which was given. Mr. Daigre also represented that the Canadian and American Mortgage and Trust Company would prosecute Mr, Luckett on this affidavit. I and Captain White considered over the matter, and we advised Mr. Luckett to have the suit withdrawn. We did not see Mrs. Luckett in reference to the withdrawal of the suit at all.’ Again: ‘ I have no recollection of seeing Mrs. Luckett in reference to the withdrawal of the suit. I knew the suit was dismissed, but did not know on what terms. Captain White and I abandoned the matter. It was the threat of the prosecution and the affidavit itself which caused us to give this advice to Mr. Luckett. *1271 I thought it placed him in a false position.’ On cross-examination he states that: ‘There was no representative of the company present when we advised Mr. Luckett to dismiss the suit.’
“ With reference to the same document Mr. Luckett, the husband and the person charged to have exercised violence and coercion, says: * Mr. Bowman told me, or advised me, to withdraw the injunction. I laid the ease before my wife and told her that I was in this position, and we persuaded her to sign this instrument. This paper was signed in Alexandria. I didn’t take it up home and have my wife to sign it up there. I had a talk with my wife about signing it at home before she came down. She didn’t want to do it, but she did it. I insisted upon her doing it. I told (her) of these threats and the whole circumstances.’
“On cross-examination the same witness says: ‘There was an agreement between the attorneys representing the company and myself by which I was to get an extension of time, and I paid their fees. This was not one of the reasons that induced me to request my wife to sign document marked “A.” The real reason was because I wanted to get a loan from Mr. Jones in another company. I told my wife that they threatened a criminal prosecution, and that was the reason she signed it. I was not fearful of a criminal prosecution, but I thought they might attempt something of the kind as they had threatened. Mr. Jones wrote me from Memphis that they could do that. Mr. Ryan or Mr. Daigre, one, hinted that they could do that. This is all in the nature of a threatened prosecution that I know of. I don’t know that I said anything to my wife about this threatened prosecution, but she was told of it. I don’t recollect having stated to her that if she didn’t sign it I would be prosecuted. I don’t know who did tell her, but some of the lawyers told her. I was not present when anybody told her.’ However, on final cross-examination the witness corrected the last statement by stating that he told his wife of the threatened prosecution prior to the signing of the document ‘A.’ ”
The testimony in behalf of the defendant is of a negative character, and we append the following extracts, viz.:
“H. L. Daigre testified in behalf of the defendant as follows: ‘ This document “A” is in my handwriting. I was not present when Mrs. Luckett signed it. I never had any conversation with Mrs. Luckett at all in regard to her signing that document. I used nó *1272 persuasion or threats of any kind, because I did not see her any; didn’t talk with her in relation to it. I drew up this document and it was submitted to Mr. Bowman and was afterward given to Mr. Ryan, the associate counsel in this case, and the next time I saw it, it was signed by Mrs. and Mr. Luckett. I used no undue influence, no threats and nothing to get this document signed.’ On cross-examination he further states that he did intimate to Mr. Bowman that if this injunction suit was pressed that the loan company would prosecute Mr. Luckett, and at the same time that the company had instructed him that no intimidation or coercion should be used, and for him not to do anything that would have that appearance. He finally states: ‘ I did not have a talk with Mr. Bowman as detailed by him.’ ”
Mr. Ryan, the other attorney, fully corroborated Mr. Daigre on this point, simply stating that he never used any threats or inducements to induce Mrs. Luckett to sign document “A.” That he never spoke about it.
But the statement of Mr. Bowman is direct and positive to the effect that “ it was the threat of the prosecution and the affidavit itself which caused us to give this advice to Mr. Luckett. I thought it placed him in a false position.”
Mr. Luckett’s statement is equally clear and emphatic that he told his wife of the position he was in, and “persuaded her to sign this instrument.” That he insisted upon her doing it. That he told her “ of these threats and the whole circumstances.” That he told her that he was “threatened with a criminal prosecution and that was the reason she signed it.”
Accepting the statements of Messrs. Daigre and Ryan as perfectly true, it is only to the effect that they did not see or speak with Mrs. Luckett on the subject; yet it is undoubtedly shown that Mr. Daigre, as attorney for the defendant, went to Mr. Bowman, as attorney for Mrs. Luckett, with the affidavit of H. P. Luckett; and it soon afterward transpired that the suit was withdrawn under the circumstances detailed in document “A.”
To our thinking, this evidence clearly establishes that Mrs. Luckett’s consent to the terms proposed in document “A” was obtained through the marital influence and coercion of her husband, and that in signing it her mind was influenced by the fear of a criminal prosecution being inaugurated against her husband, at the instance of *1273 the defendant. That while it does not appear from the evidence, that the defendant’s attorneys ever approached either H. P. Luekett or his wife on the subject, yet it is true that the evidence substantially shows that the defendant set in motion the causes which brought about the desired result.
In the light of all the evidence can this court affirm that document ii A” can serve as the foundation of a valid and binding judgment against a married woman; or, can operate as an equitable estoppel against the judicial assertion of her rights by her children ?
It is our deliberate opinion that we can not.
The agreement only purports to be an admission that the property she claimed was that of her husband; a withdrawal of her right, title and interest therein; and that her renunciation was intended to operate as an inducement to the defendant to make a loan to her husband. It does not express any consideration received. It is intrnded as an abandonment of her rights altogether. She has never been paid a tithe of the five thousand dollars her husband received and consumed. As the judgment of dismissal and disallowance of her title can not be any more substantial than the foundation on which it was based, the same is altogether unavailing either as res judicata or estoppel against the plaintiffs as heirs at law of Mrs. Luekett.
There is a total absence of proof that defendant’s loan inured to Mrs. Luckett’s benefit; on the contrary, the proof is perfectly clear that it did not inure to her benefit, or that of her separate property.
In our opinion there is scarcely any point of similitude between this ease, in point of fact, and the cases of Barron vs. Sollibellos, 26 An. 289; Thornhill vs. Bank, 34 An. 1171; Calhoun vs. Lane, 39 An. 594; Sentell vs. Stark, 37 An. 679. It is elementary that a married woman can not bind herself for her husband’s debts. R. O. O. 2398.
And in an early case which has been frequently since affirmed, it was very correctly held, that a married woman’s contract of surety-ship for her husband, on which a judgment has been rendered, remains liable to the same objection as the obnoxious obligation, as long as the disability lasts. Medart vs. Fansnatch, 15 An. 621.
And while it is true that our predecessors said that a married woman who had made a transaction and compromise of a lawsuit would “ not be listened to when saying that the debt sued on was her husband’s” (26 An. 289), and that statement .has been since-re *1274 peafced with apparent approval in some more recent cases; yet we find it difficult to perceive any reason why a greater degree of sanctity should attach to a compromise than to a confession of an ordinary judgment.
And it has often been held that a married woman is not estopped by a confession of judgment from the assertion of her rights. Strother vs. Hamlet, 28 An. 839; Dancy vs. Martin et al., 23 An. 323; Raines vs. Burbridge, 15 An. 628; Succession of Andrus, 34 An. 1065; Bowman vs. Kaufman, 30 An. 1024.
We are of the opinion that the dictum of that case is not in keeping with the jurisprudence of this court, and should be so modified as to conform thereto. It is quite evident that this is the clear import of our opinion in Calhoun vs. Lane when carefully considered, in the light of the facts therein developed.
On the question of estoppel against a married woman our jurisprudence is uniform and consistent.
In Harang vs. Blanc, 34 An. 632, the court puts the proposition thus:
“It is also urged that the plaintiff is estopped by reason of her conveyance to defendant, and the declarations made in the acts, from denying its truth and seeking its nullity. It has often been held that when a married women seeks to avoid an act, which she attacks upon the ground that it contravenes the provisions of a prohibitory law designed for her protection against a marital influence, that the principle of estoppel, as usually recognized, is not applicable.”
Chaffe vs. Oliver, 33 An. 1009, is to the same effect, citing: Bisland vs. Provosty, 14 An. 169; Leblanc vs. Bouchereau, 16 An. 11; Provost vs. Provost, 5 An. 572; McIntosh vs. Smith, 2 An. 756; Theriet & Baron vs. Voorhies, 12 An. 852; Cuny vs. Brown, 12 Rob. 84; Pascal vs. Sauvinet, 1 An. 428; Firemen’s Insurance Company of New Orleans vs. Julia Louisa Cross, 4 Rob. 508.
And we think it quite evident that the defendant’s case does not fall within the exception therein stated with respect to the “rights of innocent third persons who have acted in good faith upon the apparent validitv of such transactions.”
The authority of those adjudications was recently recognized in Vicknair vs. Trosclair, 45 An. 377.
*1275 Having made a careful examination and study of this case we are of the opinion that neither of the pleas of res adjudieata or estoppel are good.
Judgment affirmed.