*1394 The opinion of the court was delivered by
Nicholls, C. J.
The plaintiff obtained from the District Court for the parish of De Soto an order of seizure and sale directed against certain real estate belonging to Silas P. Talbert in enforcement of notes executed by Talbert bearing mortgage on said property.
Mrs. Bella Horn, the wife of Talbert, intervened in said proceedings. In her petition of intervention she alleged that her husband was indebted to her in the sum of thirty-one hundred and sixty-five dollars and more for paraphernal funds of hers received by him and converted to his own use, the said amounts having become her property from certa’n designated sources; that the evidence of her husband’s said indebtedness to her had been duly and legally placed of record in the office of the recorder of mortgages for De Soto parish on the 23d of November, and by said recording payment of the indebtedness due to her by her husband had become secured in her favor by a general mortgage on all her husband’s property in the parish of De Soto since the date of the same; that said mortgage when it arose was the first mortgage on his property; that it still existed in full force and effect on his property as a first mortgage.
That about the month of April, 1889, her husband proposed to mortgage certain real estate (which she specially described) in the parish of De Soto and on which her said mortgage rested, to the Equitable Mortgage Company, represented at that time in the city of New York by Norman P. Thompson and in Louisiana by William P. Ford, for a loan. That it became necessary for the purposes of her husband and said mortgage company that her legal mortgage should be canceled and erased from the mortgage records in order to give to the said mortgage company a first mortgage on said property — that her husband endeavored to induce her to consent to the •erasure and cancellation of her said legal mortgage on said property, but that she refused — that her husband then by persuasion and marital coercion induced her to go to Shreveport to see William P. Ford, the agent of the company; that she was then and there, on the 27th day of May, 1889, under marital coercion of her husband and fraudulent representations by the said William P. Ford, and in ignorance of the extent of her legal rights and after repeated protests and refusals on her part induced to sign an act before said William P. Ford, who was at the time also clerk of the District Court and ex-officio notary public for Caddo parish, by which it was declared *1395 that the said sum due her by her said husband had been paid and by which the clerk of the court for He Soto parish purported to be authorized to cancel said legal mortgage. That said sum due to her by her husband (as was well known to him and to said Ford, the agent of said company) had not been paid — that she repeatedly told Ford at the time that no part of said sums had ever been paid to her by her husband and that no part of said sums had since been paid.
That said sum due her by her husband (as was well known both by her husband and to Ford, the agent of the company) had not been paid. That on the 28th of May, 1889, the deputy clerk of the District Court of De Soto parish, acting upon the pretended authority sOf said so-called acknowledgment and power to cancel, by her, pretended to cancel and erase her legal mortgage for said sums against her husband’s property — that upon the 27th of May, 1889, her husband executed a conventional mortgage on said lands in favor of Norman F. Thompson, the New York agent of said mortgage company, to secure notes or bonds payable to bearer at the office of said company for the sums set forth in the mortgage attached to plaintiff’s petition, and that said mortgage was duly recorded in the office of the Recorder of Mortgages for De Soto parish on the 28th of May, 1889.
That lately the Equitable Security Company of New York, the successor of the Equitable Mortgage Company, claiming to be the holder of several of said notes, and with full knowledge of all the facts above alleged, had obtained in the De Soto court an order of seizure and sale of said lands under said mortgage, under executory process, to pay and satisfy said notes, together with attorney’s fees, and that said lands were then advertised to be sold on the first of February, 1896. That unless restrained by an order of court the sheriff by whom said sale would be made would proceed to pay the proceeds of said land when sold to said Equitable Securities Company, in disregard of her rights and of her legal mortgage on said property for said sums. That the act by which she acknowledged payment; of the said sum due her by her husband, and for which she had a legal mortgage on said lands, and by which the clerk of court is said to be authorized to cancel her legal mortgage on said lands, is utterly null and void and without legal effect, for the reason that the same was untrue in point of fact and was extorted from her by the marital influence and coercion of her husband and in *1396 ignorance of the extent of her legal rights and upon the fraudulent representations of said Ford, and for the further reason that she was-not examined by the officers before whom the act was signed separate and apart from her husband, and her legal rights were not explained to her by said officer, as required by law, or by any one' else, and said act did not recite that she was so examined separate- and apart from her said husband, or that her legal rights were-explained to her by said officer, or by any one else. She therefore averred that she was entitled by law to have recognition and enforcement of her said legal mortgage upon said lands for said sums, as the first mortgage upon the same and in preference to the-mortgage of the Equitable Securities Company. That said lands, were the only lands owned by her husband at the time of the execution of said pretended acknowledgment of the payment by her or since, and her said husband did not own at the time of said acknowledgment, nor had he since owned, any other land or-other property subject to mortgage than that referred to. . She prayed to be authorized to stand in judgment and intervene in the pending suit by third opposition; that her husband and the plaintiff in executory proceedings be cited ; that after due proceedings there-be judgment nullifying and setting aside her said so-called acknowledgment of payment and authority to cancel her legal mortgage upon-said lands and annulling and setting aside the said so-called cancellation of her said legal mortgage, based upon said so-called acknowledgment, and that she have judgment reinstating her legal mortgage upon said lands for the sum of thirty-one hundred and sixty-five-dollars as having effect from and since November 27, 1883, and ordering the payment of her said legal mortgage for said sum in preference to the mortgage of the plaintiff for said sum of thirty - one hundred and sixty-five dollars, with recognition of her legal mortgage therefor upon all the lands of her said husband, and particularly upon the property referred to as having effect from and since November 27, 1883. She further prayed that the sheriff of De Soto parish be notified of the third opposition and ordered to hold the proceeds of sale of said property when sold until further orders of the court in said suit, and that upon a final hearing she have judgment decreeing her to be paid in full the amount of her claim,, principal, interest and costs, in preference to the plaintiff.
Mrs. Talbert simultaneously instituted direct proceedings in the *1397 District Court for De Soto parish against her husband and the clerk of the District Court for that parish for the annulment and setting aside of the said act of acknowledgment of payment and authorization to cancel her mortgage — for the recognition of her claims against her husband and the mortgage securing the same, and the reinstatement of the evidence of the same upon the records of the Recorder’s office in De Soto parish. By consent cf parties this proceeding was consolidated with and tried with the main suit. The plaintiff in executory proceedings and the clerk of the District Court of De Soto answered by pleading first,, the general issue. The Equitable Securities Company then averred that it acquired the mortgage notes attached to their petition for a valuable consideration in due course of business and before maturity; that is to say, said paper was acquired by it on or about the 23th of November, 1894, since which time it had been the legal holder and owner thereof-. That when it acquired said paper there was exhibited along with said notes a mortgage certificate issued from the clerk’s office of De Soto parish wherein said land is situated, which showed that the notes acquired by it were secured'by special mortgage on the real estate of the maker, and that said mortgage .was the only existing mortgage against said property, and that upon the faith of said mortgage certificates it acquired said notes before maturity for .a valuable consideration and in due-course of business. It denied the existence of any legal mortgage in favor of the wife, or that the same had any existence in point of fact or truth; bnt averred that if she ever had a legal mortgage (which was denied), she on the 27thof May, 1889, before a notary public and attesting witnesses, acknowledged that the same “ had been paid in full,” and “authorized and empowered the eler,k and ex-offioio recorder of the parish of De Soto to cancel said legal mortgage in full and erase the same from the records ” of his office. That at the time it acquired said property it had no knowledge or intimation that the said Mrs. Talbert ever had amy legal mortgage,, or claimed to have any legal mortgage, against the property of her husband; that it acted solely on the faith of the mortgage certificate issued by the clerk, and that if there existed any equities as between the said Mrs. Talbert and the original owners of said paper the seizing plaintiff could not'be affected by any claim now set up by the wife.
It specially denied that W. P. Ford ever acted as agent for it or *1398 the Equitable Mortgage Company, or the said Norman F. Thompson, in this transaction, bub specially averred that Ford, in securing the money for the husband, acted as his agent, and was never in any way connected with it in connection with this or any other matter whatever; it denied that Ford ever made any fraudulent representations to the wife to secure the cancellation of her pretended legal mortgage, or that her husband exercised any marital influence or coercion over her or any threats or violence, but averred that the act of date May 27, 1889, was signed freely and voluntarily by her. That at the time said original loan was- made to the husband there existed a special mortgage on said real estate for the sum of eighteen hundred dollars, with" eight per cent, per annum interest from January 1, 1888, which said amount was secured by special mortgage on the property referred to, which mortgage was held by John Shuttleworth, a citizen of Shreveport, which mortgage was superior in rank to that claimed'by Mrs. Talbert; that the amount borrowed by the husband through Norman F. Thompson was paid to Shuttleworth in satisfaction of said mortgage note, admittedly of superior rank to the mortgage now asserted by Mrs. Talbert, and in any event said real estate is bound for the payment of said notes as asserted by plaintiff by preference over the claim now propounded by Mrs. Talbert, on the ground and for the reason that the amount of money borrowed by her husband enured to her benefit, in that it discharged a superior lien to that claimed by her in this suit;- that the identical money so borrowed by the husband was paid by the original lender to said Shuttleworth for the mortgage note referred to, which was canceled, whereby Mrs. Talbert was benefited and whereby the mortgage now asserted by plaintiff became a superior lien upon the property in favor of the holder and owners of the mortgage notes or bonds executed by Talbert and now owned by the plaintiff. The premises considered, both prayed that the claims and pretensions of the wife be totally and wholly rejected.
The District Court rendered judgment recognizing and enforcing the wife’s mortgage against the property referred to for the sum of twenty-five hundred dollars, as having effect from and after November 23, 1883, and ordering that the cancellation of the said legal mortgage on May 28, 1889, by the deputy clerk of De Soto parish be annulled and set aside as having no legal effect; also ordering that the legal mortgage of Mrs. Talbert be reinstated. The judgment further *1399 decreed that the mortgage held by the plaintiff in executory proceedings was inferior and subordinate in rank to the legal mortgage of the wife for the sum of twenty-five hundred dollars and ordered that the amount of her mortgage claim for twenty-five hundred dollars be paid to Mrs. Talbert out of the proceeds of the sale of the real estate referred to when sold, by preference to the plaintiff. It further decreed that the wife have judgment against her husband for the sum of twenty-five hundred dollars, with recognition of legal mortgage therefor from and since November27, 1883. It further decreed that the rule sued out be made'absolute — that the plaintiff pay the costs of the intervention and the costs of the rule, and that the husband pay the costs of the main suit against him.
The Equitable Securities Oompany appealed.
On the 27th day of May, 1889, Mrs. Bella Talbert, wife of Silas F. Talbert, and Silas F. Talbert himself, signed the following instrument :
“ State of Louisiana, \
“ Parish of of Oaddo. /
“ Before me, the undersigned authority, personally appeared Mrs. Bella Talbert, wife of and authorized by Silas F. Talbert, residents of De Soto parish, who declared to me that the legal mortgage for the sum of thirty-one hundred and sixty-five dollars in her favor, against the property of her husband as recorded in Book of Mortgages X, page 303, of the records of De Soto Parish, La., have been paid to her in full.
“ She further declared that she does by these presents authorize and empower the clerk and ex-officio Recorder of the parish of De Soto to cancel said legal mortgage in full and erase same from the records.
“Thus done and passed at Shreveport, La., on this the 27th day of May, 1889, in the presence of the attesting witnesses.
“ Bella Talbeet.
“ S. F. Talbeet.
“ Attest:
“A. J. Reynolds.
“ John Shuttlewobth.
“ W. P. FORD,
“ Clerk and Ex-Officio Notary Public.”
*1400 At that time there stood recorded on the books of the mortgage office of De Soto evidence of an indebtedness of thirty-one hundred and sixty-five dollars by Silas P. Talbert to his wife — the said registry carrying with it, as its effect, the placing of a general legal mortgage for the amount stated on the real property of the husband in De Soto parish in favor of the wife.
Upon the next day (May 28) Silas P. Talbert, by notarial act before W. P. Pord, notary, in Caddo parish, executed a number of promissory notes, among which were the notes sued on in this action, and secured payment of the same by special mortgage on certain described property in the parish of De Soto. The notes were payable to bearer, but in the mortgage act they were declared to represent an indebtedness due by the mortgagor to Norman P. Thompson, represented in the act by W. G. Boney. The certificate of the recorder of mortgages, required by Art. 3364 of the Civil Code to have been attached to the mortgage act declaring the mortgages which were inscribed on the object of the contract, was not furnished to the notary.
On the 28th of May the deputy recorder of De Soto copied in full, across the record of the instrument evidencing in that parish the wife’s mortgage, a copy of the act which has just been referred to as having been signed by her the preceding day, in which she acknowledged payment in full of her mortgage and authorized the recorder of De Soto to erase the same from the records, and below the copy wrote:
“By virtue of the above authority, I hereby cancel and erase this mortgage in full, and file said act in my office as my authority for so doing.
“This May 28, 1889.
“ (Signed) W. J. Elam,
“ Deputy Clerk and Ex-Offieio Deputy Recorder.”
The notes in question passed into the possession of the Equitable Mortgage Company about the 5th of June, 1889. They were deposited by said company with the American Loan and Trust Company on or about the 7th of August, 1889. They were so deposited and pledged as collateral security with the American Loan and Trust Company as trustee for the holders of debentures of the Equitable Mortgage Company. Afterward the New York Security and Trust *1401 Company succeeded to the American Loan and Trust Company as trustee and the securities passed to it as such trustee. The Equitable Mortgage Company defaulted on the 1st of September, 1898, on the interest coupons on the debentures for which (among others) the notes were pledged. Thereupon the trustee sold the notes with a mass of other securities to the plaintiff, the Equitable Securities Company. The total amount of notes so purchased amounted to several millions of dollars, and payment for same was made in the debentures or obligations of the'old Equitable Mortgage Company, which had been acquired by the Equitable Securities Company through purchases from the holders thereof. The amount of obligations thus surrendered in payment for the notes so sold was approximately the face value of the notes.
The Equitable Securities Company having proceeded to foreclose the mortgage security, Talbert’s notes held by it was met by the opposition of Mrs. Talbert on the grounds set up in her pleadings.
We think the. evidence establishes the fact that W. P. Ford, the notai’y public before whom was passed the notarial act of acknowledgment of payment and the act of mortgage referred to, was the agent of the lender of the money to Silas F. Talbert, and that Boney, who accepted the money, was a mere formal party to the act. We think it more than likely that the Equitable Mortgage Company, of which Norman F. Thompson was the treasurer, was the real lender. It is claimed on behalf of the plaintiff that the money was lent and the mortgage accepted on the faith of the public records which disclosed that at the time of the giving of the same there was no other mortgage upon the property. The Equitable Securities Company may, prior to making the purchase it did of notes from the trustee, have had before it acertificate from theRecoi’der of Mortgages of De Soto parish that the mortgage held by the Equitable Mortgage Company was the only one upon the property mortgaged; and may have acted, in making its own purchase of notes, to a certain extent on the faith of such a certificate; but the mortgage itself wasnot taken on the strength of sucha certificate, as the wife’s mortgage was still of record in De Soto when that mortgage was accepted. The original parties may have acted in view of the recital of payment made in the notarial act executed the day before and upon a reliance that when that act should have been recorded later in De Soto, and acted upon by the Recorder of De Soto, the mortgage of the wife would be thereby canceled.
*1402 It is further claimed by the plaintiff that even if the act o acknowledgment of payment and the act of cancellation would have been for any reason null, void and of no effect as against Norman F. Thompson or the Equitable Mortgage Company, it would have full force and effect in its favor, as it acquired the notes before maturity without notice in due course of trade and for a valuable consideration — that they were third parties holding in good faith and under circumstances such as to cut off all the equities existing in favor of the wife as against the original parties both as to the notes and the mortgage, and that Mrs. Talbert is by her act estopped from contesting its rank of mortgage.
We first direct our attention to the notarial act in which Mrs. Tal-bert acknowledged she had been paid in full the amount of her mortgage. That declaration is at best a statement of fact — a mere admission of a receipt of money which is not conclusive and not binding, if not true — the fact that the receipt is acknowledged before a notary adds no weight to it. Brannon vs. Mesick, 10 Cal. 95. It is open to explanation by parol. Cole vs. Taylor, 22 N. J. L. 59.
As between the husband and wife it can not be pretended the latter can not go behind the receipt and disprove it.
We are satisfied as a matter of fact (in spite of the acknowledgment of Mrs. Talbert) that she has never been repaid by her husband the amount of the recorded claim which she held against him, and that the act before Ford was simply a measure designed by her husband and Ford to obtain a loan without pursuing the formalities required by law, in order to give to the party from whom he was to borrow the money a first mortgage on his property. We think it was likely, from the wife’s testimony, that the husband would have had trouble in obtaining the consent of his wife had he endeavored to ha\ e had her waive her rank of mortgage in favor of the lender by following out the provisions of Art. 129 of the Civil Code. Had that course been pursued she would have had placed squarely and directly before her the nature, character and effect of the act she was called on to sign, and everything points to the course resorted to by Ford and Talbert as having been adopted as an easy and convenient manner of avoiding anticipated difficulties and evading the provisions of the law enacted for the protection of the rights of married women. We regard the two acts before Ford as parts of one and the same transaction and think they should be read and taken together. If *1403 Mrs. Talbert (who had been evidently taken to Shreveport in order that the loan to her husband should be consummated) had been a direct party to the act oí mortgage of the 28th of May. and had been caused to make therein the same declaration which she did in the notarial act of the day before, and to give the recorder of De Soto authorization to cancel her legal mortgage from the records of that parish, would Norman F. Thompson (declared to be), the mortgagor in that act, through her participation in the act of mortgage, in that manner have succeeded in .obtaining a first mortgage in the husband’s property? We are of the.opinion that he would not; that he would have had no right to rest upon the verity of an acknowledgment of payment so made; that he would have had to make inquiry and inform himself of the truthfulness of that statement or take the risk of the fact being in reality as it was declared to be. With all the parties present, with a simple legal form leading up directly to the obtaining of a first mortgage (if all parties were in good faith), a turning aside from that method to rest upon a wife’s simple acknowledgment of payment, coupled with an authorization to the recorder of the parish of De Soto to subsequently cancel her mortgage, would have been a palpable evasion of the formalities of law in aid of the palpable object of the parties to obtain a renunciation of the wife in favor of the lender.
We think the parties can take nothing by separating the two acts; their connection is visible and their separation was more likely, as we have said, to have led up to the wife being taken at a disadvantage than had one single act been resorted to.
We were at one time impressed with the idea that as the wife who. had entrusted her paraphernal funds, or the administration of her-paraphernal property to her husband, was authorized to resume it at. will, the husband would be entitled as a correlative right to call for-his protection for- a receipt from, her evidencing that he hadi returned to her all that he had received, and that having in his. possession such receipt he would be entitled, on producing the same, to the recorder, to insist upon a cancellation of the wife’s mortgage; but we are satisfied that the right to a receipt would not carry with it, as a necessary consequence, a right to obtain thereon the cáncellation of the mortgage when one should have been given. The extinction of the mortgage would result from the actual payment of the money and not from a mere extra-judicial acknowl *1404 ■edgment of payment easily procurable almost at all times by a husband-. The written receipt, as we have said, is a mare inconclusive -admission on which parties have no right to rely when given by a wife to a husband — subjected, as she is, to marital influence, A ■release is something different from a receipt. A release extinguishes a pre-existing right, while a receipt is mere evidence of a fact.
We are next to inquire whether the plaintiff has by purchase of the notes acquired any greater right of protection than Norman F. Thompson had in the premises. Mrs. Talbert does not question the fact that plaintiff has a valid debt and a valid mortgage against her husband and her husband’s property; what she denies is, that plaintiff’s mortgage ranks her own. The original holder of the notes, as we have said, accepted his mortgage, not on the strength of the condition of the public record, as claimed, but on reliance upon an incorrect statement and admission of fact made by the wife The plaintiff had no dealings whatever with Talbert or his wife. Plaintiff holds the mortgage as a mere assignee, and takes no greater rights in the premises, as to the mortgage, than its assignor had. The mortgage is not negotiable in the same sense as negotiable notes are negotiable: and the rules governing the equities in matters of negotiable notes have no bearing. We do not think that our decisions granting protection to third parties dealing on the faith of the condition of the public records reach this case. The record itself would have disclosed the fact that the cancellation, of the mortgage rested upon a mere declaration of the wife that she had been paid, and the execution of the double acts •before Ford, notary, shown thereon, would have exhibited the whole •situation. It has been held that money receipted for, but not in fact paid, might be shown even against an innocent third person who relied upon the receipt without inquiry (Travelers’ Ins. Co. vs. Chappelon, 83 Ind. 429). We think this case is brought fairly within the decision in Luckett vs. The Canadian and American Mortgage and Trust Company, 47 An. 1259. We are of the opinion that Mrs. Tal-bert is not estopped by her declaration made in the act before Ford, nor by the cancellation of her legal mortgage on the records in favor of the plaintiff in this case.
.It is urged by appellant that, even though the legal mortgage in favor of the appellee be held to have always existed on her husband’s property, it should take rank below its own, inasmuch as, with the *1405 money borrowed by the husband, a mortgage on the property priming that of the wife was paid and extinguished, and the wife would be, therefore, to that extent benefited. There would be no benefits resulting to the wife from a mere substitution of creditors. No conventional subrogation is claimed to have been made, and no fact has been shown from which legal subrogation has taken place. Appellant’s contention on this branch of. the case is not well founded. 2 An. 774, Fontenot vs. Soileau; 7 An. 140, Gale vs. Matta.
For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.
Mr. Justice Blanchard takes no part in this decision, having recused himself. •