(70 South. 850)

No. 20307.

MARTIN v. PICHON (CENTLIVRE, Intervener).

(Jan. 24, 1916.)

*(Syllabus by the Court.)*

APPEAL AND ERROR ⊚➡1177—DISPOSITION OF CAUSE—GROUNDS FOR REMANDING — WANT OF EVIDENCE.

Where evidence equally important in the decision of a case to both litigants, and to all appearances readily obtainable, has not been offered, and the interests of justice will be best subserved thereby, the case will be remanded, in order that the deficiency may be supplied.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. ⊚➡1177.]

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; J. B. Lancaster, Judge.

Action by Mrs. Adele Sumral Martin against Edgar J. Pichon, wherein Mrs. Magdalene Centlivre, wife of Edgar J. Pichon, filed intervention and third opposition. From the judgment, plaintiff appeals. Reversed and remanded.

Harvey E. Ellis and Walter A. White, both of Covington, for appellant. Henry L. Garland, of Opelousas, for appellee and intervener.

### Statement of the Case.

MONROE, C. J. Plaintiff loaned defendant $4,000, upon the security of a mortgage upon certain lands, and, the debt having matured and but $500 having been paid, obtained an order for the seizure and sale of the lands, whereupon the wife of the defendant intervened, alleging that her husband was indebted to her in the sum of $2,000, for paraphernal funds received by him; that her claim therefor had been recorded, prior to the registry of the mortgage to plaintiff; that it became necessary, in order that plaintiff should acquire a first mortgage, that her (intervener's) mortgage be canceled, and that she was induced by marital influence, to the knowledge of plaintiff, to sign an order to the clerk of court and ex officio recorder of mortgages to cancel it; that the said order was gratuitous, and unauthorized by any court; that she was not examined apart from her husband by the notary receiving the same; and that the purpose was to give other creditors of her husband a preference. Wherefore she prays that said order be canceled, her original mortgage be reinstated, and she allowed $2,000, with interest, from the proceeds of the property. For answer to the intervention, plaintiff alleges that she accepted the mortgage sued on as an innocent third person, without knowledge of the mortgage set up by intervener, "except that it had been previously canceled"; that she acted on the faith of the public records; that her rights cannot be affected by any marital influence which may have been exercised, but that she knew of none; and that intervener, having consented that her mortgage be canceled, and, plaintiff having accepted her mortgage on the faith of that consent, intervener is now estopped to attack the cancellation.

The order, or act, authorizing the cancellation of intervener's mortgage is not in the record, and does not appear to have been

offered on the trial, and the evidence concerning its execution and character is altogether oral.

Mr. Bollinger, a member of the bar and also a notary, testifies that he was representing both Mr. and Mrs. Pichon as attorney, and further as follows:

"Well, at that time Mr. Neuhauser had charge of Mrs. Martin's affairs, and he notified Mr. Pichon that there was a mortgage in favor of Mrs. Pichon on this property, and Mr. Pichon came to me to get me to draw up a release, and I drew up the release and drove out to Mr. Pichon's house to get Mrs. Pichon to sign, and I discussed the matter with her, and everything was carefully explained, and she was as anxious to get the deal through as Mr. Pichon was, and there was no coercion. Q. That was a notarial act? A. That is the way I remember it. Q. Who was present at the time she signed the act of relinquishment, besides you? A. That has been about four years, and I do not remember exactly. Q. Was Mr. Pichon present? A. He was on the place. I do not remember whether he was in the room or not. Q. He signed to authorize his wife? A. I do not remember."

Mrs. Pichon testifies that her mother left her the $2,000 in question ($1,000 mortgage on the Redmen's Hall; $500 in her will, and a $500 mortgage on the home "where we live"), and that the whole of it went to pay Mr. Pichon's debts, together with $800 which she received as the price of two lots, and the $4,000 received by her husband from plaintiff. She says that she signed "a mortgage" before Mr. Bollinger, and that her husband "went into the other room"; but that Mr. Bollinger did not read to her any authorization to the clerk of court for her to sign, authorizing him to cancel a $2,000 lien, saying that she had been paid. Her cross-examination reads, in part, as follows:

"Q. You said, at the time, at Mr. Bollinger's, when you signed this instrument, that your husband went into the other room? A. Yes, sir. Q. You signed it during his absence? A. He just walked in the other room, and Mr. Bollinger read it, and I signed it. Q. And you signed it during the absence of your husband? A. Yes, sir. * * * Q. Mr. Bollinger did not attempt to intimidate you, or threaten you, did he? A. No, sir; he only told me that I would have to give up my homestead rights. Q. He explained about the homestead rights? A. Yes, sir. Q.

And then you signed the document? A. Yes, sir. Q. You signed two documents? A. Yes, sir. Q. Mr. Bollinger told you to? A. Yes, sir. Q. Did anybody else? A. No, sir; he was the only one. Q. And you voluntarily signed, after it was explained to you? A. Yes, sir. Q. And then, later, you waived your homestead rights? A. Yes, sir; but I thought that I would get something out of what was coming. Q. Your husband was not present when you signed either of the documents? A. I don't remember about when I signed the homestead; but he was for the mortgage. Q. What do you mean by the homestead and the mortgage? A. To cancel the mortgage. Q. He walked in the other room when you signed the mortgage? A. As far as I remember. Q. Are you sure that Mr. Pinchon, your husband, was not present when you signed to authorize the cancellation of this mortgage; is that correct? * * * A. I don't remember; I know that he was not there when I signed the homestead act. Q. You do not know positively? A. I am not positive; I think that he was. Q. You signed of your own free will? A. I signed it because they said that I would have to in order for him to get the money. Q. You signed it of your own free will; nobody forced you to? A. No, sir. Q. Nobody threatened you? A. No, sir. Q. You were acting of your own free will? * * * A. I did, under condition that I would be left something; I had no idea that every thing would be taken. Q. Mr. Bollinger did not misrepresent anything? A. He did not read to me about the $2,000. Q. Are you sure that was not in it? A. I did not receive payment. Q. He read the act to you? A. He did not read that part. Q. Did you see him skip any of it? A. I did not see him skip any of it; I took his word, and did not read it after him."

We find in the record the act of mortgage upon which plaintiff proceeded, and it is signed by both defendant and intervener and contains a waiver by both of their homestead rights, but contains no authorization for the cancellation of intervener's mortgage for $2,000. We find also the sheriff's procès verbal of the sale of the mortgaged property (which was adjudicated to plaintiff for $3,-000) and what purports to be a copy of the mortgage certificate, which presumably was read at that sale, and which is silent as to the original inscription of intervener's mortgage and its cancellation, but contains the following recital of an inscription of a date later than the mortgage which plaintiff has enforced, to wit:

"I find recorded, in Mortgage Book ———, page 568, a mortgage, lien, and privilege, granted by Edgar J. Pichon, in favor of Mrs. Magdalene Centlivre, wife of Edgar J. Pichon, for the sum of $2,000, by notarial act passed before Oscar L. Dittman, N. P., of this parish, December 9, 1911."

There is no other testimony than that of the intervener in support of her allegation that she inherited $2,000 from her mother and turned it over to her husband.

### Opinion.

The oral testimony which we have quoted (and which is all there is concerning the order, or act, authorizing the cancellation of intervener's mortgage) having been received without objection, we accept it for what it may prove; and it being admitted, or in effect admitted, by the pleadings of both litigants, that intervener's mortgage was at one time recorded, and afterwards, under the circumstances narrated, canceled, we accept those facts. But the testimony does not enable us to say that the order, or act, in question was so executed as to bind the intervener. The law regulating that matter reads:

"Married women above the age of twenty-one years shall have the right, with the consent of their husbands, by act passed before a notary public, to renounce in favor of third persons their matrimonial, dotal, paraphernal and other rights. The notary public, before receiving the signature of any married woman, shall detail in the act and explain verbally to said married woman out of the presence of her husband, the nature of her rights and of the contract she agrees to." Civil Code, art. 129.

Referring to the article thus quoted, this court has said:

"A simple reading of the provision, forcibly impresses upon the mind that the law permits a renunciation, provided the notary, *before* receiving the signature of the married woman, explains to her, verbally, *out of the presence of her husband:* (1) The nature of her rights *and* that of the contract she agrees to. (2) That he shows that he has done so, by *detailing in the act* the nature of the double information which he has there given her, and that the formalities have been fully observed. It is not until after he has furnished her this information, and thus

138 LA.—27

detailed what has occurred, that he has authority to receive her signature."

Answering the contention that the notary, being a sworn public officer, must be presumed to have done his duty, the court said, in effect, that while that doctrine would apply in the case of a judge authorizing a married woman to borrow money, because he is a *judicial* officer, it has no application to a notary, who is a ministerial officer, and whose duties, under the article in question, are specifically prescribed. And, in conclusion, it was said that:

"The burden of proving fulfillment of the formalities was on the creditor who *affirmed* a valid renunciation, and not on the wife who *denied* the same." Succession of Montgomery, 44 La. Ann. 378 et seq., 10 South. 774.

See, also, Succession of Gremillon, 4 La. Ann. 411; Ashford v. Tibbitts, 11 La. Ann. 168; Luckett, Tutor, v. Trust Co., 47 La. Ann. 1259, 17 South. 836; Securities Co. v. Talbert, 49 La. Ann. 1393, 22 South. 762.

In view of the law and jurisprudence thus referred to, and, on the other hand, of that (C. C. 2277; Cutler v. Succession, 37 La. Ann. 95; State ex rel. Carl v. Judge, 37 La. Ann. 380; Bank v. Maureau, 37 La. Ann. 857; Lazarus v. Friedrichs, 117 La. 714, 42 South. 230) which requires something more than the testimony of a single interested witness to establish a claim for more than $500, we are of opinion that evidence, which to all appearances is readily obtainable, is important to both litigants, and is necessary to an intelligent decision herein, is lacking, and that the interests of justice will be best subserved by remanding the case, in order that the deficiency may be supplied.

It is accordingly ordered that the judgment appealed from be set aside, and the case remanded, with leave to the litigants, or either of them, to file in evidence the order, or act, hereinbefore referred to, or a duly certified copy thereof, and to offer such additional competent evidence concerning the

acquisition, by intervener, of the money herein claimed by her, as they, or either of them, may think proper, and for further proceedings according to law; the question of costs to await the final determination of the matters at issue.