JOHN E. SMITH, Tutor, et al. *v.* MRS. M. NETTLES, Administratrix, et al.

The knowledge of the existence of a mortgage communicated to the purchaser in the act of sale, will bind him without proof of the mortgage being recorded.

And when such mortgage contained the pact *de non alienando*, the purchaser and third possessor is not entitled to notice of the proceedings to enforce the mortgage.

APPEAL from the District Court of St. Helena, *Watterson, J.*
*M. M. Smith* and *D. C. Hardy*, for plaintiffs and appellants. *Angus Bowie* and *S. E. Hunter*, for defendants.

COLE, J. This appeal is taken by plaintiffs from a judgment rendered against them on the following state of facts.

*William Travis* bought at the succession sale of *John Bates*, on the 30th of November, 1842, a tract of land, for the purchase price of which he paid five per cent. cash, and gave his notes for the remainder, payable in one, two and three years.

To secure the payment of these notes, said *Travis* executed a mortgage before *Henry Leonard*, parish Judge, on the 30th of November, 1842, in accordance with the terms of sale, in which instrument of mortgage he bound himself "not to sell or deteriorate said land to the prejudice of said succession"; this act of mortgage was recorded in the book of the register of mortgages of said *Leonard*, parish Judge of St. Helena, on the 30th November, 1842.

On the 8th of March, 1843, *Travis* executed an act by which he agreed to trasfer to *Anderson Carle* one-half of the tract of land, for the consideration that *Carle* should pay to the succession of *John Bates*, or to the legal holder of the notes given by *Travis* for the tract of land to said estate, one-half the amount of said notes as they became due, and "to save harmless the said *Travis* from all the liabilities under which he may at this time rest on account of one-half of said purchase price due said estate."

*Zachariah Nettles* became the owner and holder of one of the notes given by *Travis* for the tract of land, and sometime after maturity he brought suit on the same against *Travis*, praying for judgment recognizing the mortgage given to secure said note. Upon this demand, judgment was rendered against *Travis* as prayed for; execution issued and the land was seized, sold and bought by *Nettles*, who afterwards sold it to *Hillery Edwards*. Subsequently, *Carle* being dead, his heirs, the plaintiffs, instituted this suit to annul the Sheriff's sale in the suit of *Nettles* v. *Travis*.

The reasons alleged in the petition why the sale should be annulled, are:

1. That the mortgage securing the notes given to *Bates'* succession, was not of record at the time of the purchase of their deceased father, *Anderson Carle* from *Travis*.

2. That petitioners, minor children of said *Carle*, were never made parties in any way to the suit of *Zacharie Nettles* against *Travis*.

3. That to defraud petitioners of their right, *Travis* confessed judgment without notifying the plaintiffs that he was not the owner of one-half of said land, and subsequently issued an execution on the judgment, and at the sale bought the land.

31

SMITH
v.
NETTLES.

We shall consider these objections in their order :

I. The act of sale from *Travis* to *Carle* shows that the latter was aware of the origin of the title of *Travis*, and of the existence of the notes given by *Travis* as the price of the property ; *Carle* was aware that these notes were secured by the vendor's mortgage ; if then he were in existence, he could claim no advantage on the ground that the mortgage in favor of *Bates'* estate was not of record at the time of his purchase from *Travis ;* for the knowledge of the mortgage of said estate communicated to him in the sale to which he was a party was as binding on him as if it had been recorded. Petitioners, who are his children, can claim no greater rights than he possessed. It does appear, however, from the certificate of the parish Judge, that the mortgage in favor of the estate was recorded previous to the purchase by plaintiffs' ancestor, although they have endeavored to show that it could not thus have been recorded.

II. There was no necessity to make the minor children of Carle, the present plaintiffs, parties to the suit of *Zachariah Nettles* against *Travis ;* the mortgage from *Travis* to *Bates'* succession contained the following clause : " and does hereby bind himself not to sell or deteriorate said land to the prejudice of said succession." This mortgage, therefore, contained the pact *de non alienando ;* and the effect of it was, that although half of the land had been sold to *Carle*, nevertheless, in contemplation of law, the whole of the land remained in the possession of *Travis*, the original debtor ; and *Carle*, the purchaser, is presumed to have known the titles and encumbrances under which he held. Vide 8 An. 58.

It is objected by appellants that the words on which the appellees claim, that the pact *de non alienando* rest, are not for the benefit of any but the succession of *Bates* or his heirs, and if " third parties step in and pay the debt, they must show something clearly entitling them to make use of that reservation in the mortgage." In answer to this objection, we would observe that the transfer of the mortgage notes by the estate of *Bates*, carried with it the accessory obligations and privileges to which they were subject by the act of mortgage, and any third party getting them, obtained also the same privileges that the succession enjoyed, for a party has the right to transfer to a third person any prerogatives he may possess, unless prohibited by law or by the manifest restrictions of the act conferring upon him such prerogatives. Vide *Adam Betty, Syndic of Marchais*, v. *Rose Clement, Widow Tête*, 12 An. 82.

The sale from *Travis* to *Carle* also expressly recognized the force of this pact ; for *Carle* bound himself therein to pay one-half the notes as they fell due, and save *Travis* harmless therefrom.

*Carle* having purchased property subject to the pact *de non alienando*, the mortgage being duly recorded, or at least he being cognizant of the act and binding himself to save his vendor *Travis* harmless from the mortgage given by him to *Bates'* estate, cannot claim to be in a better condition than his vendor, and he is not entitled to notice. 15 La. 267 ; 9 R. 69.

III. The evidence does not sustain the allegation of fraud.

The arrangement, alleged to have existed between *Travis* and *Zacharie Nettles*, by which the former was to confess judgment, and the latter was to buy it in, and whenever *Travis* should pay *Nettles* the amount of the debt, interest and costs for which the land was sold, then *Nettles* was to retransfer the land to *Travis*, does not necessarily establish fraud and collusion, for *Nettles* may have agreed to this to benefit *Travis* and as a favor to him. If it was done with a fraudulent intent, it is hardly probable that *Travis* should, subsequently to the death of *Nettles*, have

institbuted a suit against the estate of *Nettles* for this land, and have alleged this agreement as a cause why the land should be retransferred to him.

This suit was afterwards, on motion of plaintiffs' counsel, dismissed at his costs.

It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed with costs.

MERRICK, C. J., took no part in this case.