BREAUX, C. J.
Plaintiff, wife of Stephen W. Clark, Sr., sued for the return to her of a promissory note for $4,500, secured by vendor’s privilege.
It appears that her father had large means; years ago, a few days before her marriage, her father and mother made her an antenuptial donation, consisting of a promissory note, which was paid by the mother after the father’s death, by investing the amount of the note in buying for plaintiff a home.
This investment was made in compliance with the advice of the father of plaintiff, which was that she should buy a home, and not part with it under any circumstances.
The daughter inherited other amounts which were invested in her husband’s business. This business was carried on in the name of Clark & Sons, a firm at the time composed of Clark, Sr., and the two sons of their marriage.
In the year, 1899, plaintiff, at the instance-of her husband, sold the home in question to-her son Sheldon W. Clark, Jr., for the sum of $6,000. The deed of sale recites that $1,500 were paid in cash, and for the remainder, to wit, $4,500, a promissory note was executed, representing the price, payable in two years, secured by vendor’s privilege on the property. The note was made to the order of the maker, and by him indorsed, and bore the notary’s paraph.
In the year 1902 she became uneasy about the health of her son, who was sick. The physician advised, in order to afford him some little relief, that he should be sent to-another climate, whereupon she mentioned the necessity of the change to her husband, and said to him that she was quite willing, for the sake of her son’s health, to mortgage the home. The husband’s reply was that the money needed could not be raised in that way as the property was already mortgaged.
Touching the note in question, plaintiff avers in her petition that it remained in the possession of her husband with her consent, and she adds that she has never been in possession of the note since it was signed. She also states that the note was negotiated by her husband in May, 1904. It was at that time that she became aware, she says, that defendant was the holder of the note. She never received any part of the price. The $1,500, as before mentioned as cash, was not paid, and the amount for which the note was negotiated by her husband was never turned over to her. The note was negotiated without her knowledge.
She testified as follows:
“Q. Had Mr. Clark told you that he was going to pledge this note would you have consented? A. Yes, sir, like any wife would. Q. If he had told you that he was going to do it would you have consented? A. Yes, sir.”
*301 Plaintiff urges that her husband had no right to thus pledge her note to secure payment on debt of his own; that defendant, Whitaker, knew that he was transacting with her husband, and that the note represented her separate and paraphernal fund.
An admission in the record explains the relation of defendant to the transaction, quoting:
“Admitted if the interveners were here that they would testify that Mr. Whitaker acted as their agent in this transaction as alleged in the intervention, and would also testify that they knew nothing whatever of the matters concerned.”
In the answer, defendant Whitaker alleged that, while he acted in his own name, he was the agent of the interveners; that they received the note in good faith before maturity without notice.
The interveners substantially adopted the defense which the defendant urged in his answer.
The note in question was transferred by S. W. Clark to the purchaser by an act of pledge written in the usual form of such acts.
We should mention as part of the case that plaintiff, in addition to her allegations that the note is hers, alleges that the pledge was absolutely illegal by reason of the fact that the nóte was not indorsed by the pledgor S. W. Clark.
The relation of the facts would not be sufficiently complete were we not to mention specially that on the 29th of September, 1899, plaintiff sold the property to her son. On the 3d day of May, 1901, plaintiff’s husband borrowed $4,500 from the Whitney National Bank, payable in one year. In May, 1902, this loan was renewed with a similar pledge; that is, the note secured by vendor’s privilege before referred to. A similar negotiation was entered into for 1903. The last pledge was made to the defendant, for account of the interveners; that is, the pledge which interveners now claim.
The defendant,. Whitaker, testifying in regard to this fact said, speaking of the husband of plaintiff, quoting:
“At that particular time he was a man supposed to have large means; stood remarkably well, and, on inquiry, I was told that he was exemplary in the extreme regarding his obligations ; I had had dealings with him and trusted him implicitly; the note was to be an additional security and the firm also indorsed the note, so I considered that I had not only the note and a man sufficiently good, but also a mortgage note and the indorsement of the house.”
The following admission is also of record,, quoting:
“With few modifications they are willing to-admit that the books will show that on the 3d of May, 1901, Mr. S. W. Clark, Sr., the-husband of Mrs. fl. H. .Clark, deposited a check which he had received from Mr. Whitaker to the credit of S. W. Clark & Son, and that on the same day S. W. Clark & Son drew his check in amount sufficient to cover the loan made, and Mr. Clark presented the check rid received from the bank a note of S. W. Clark, Jr., which was handed to S. W. Clark, Sr., and the transaction was closed.
“By Mr. Leovy: I note in the admission that counsel does not refer to the fact that the mortgage note was pledged as collateral for the note of S. W. Clark and Son which was handed to S. W. Clark, Jr., at the time.
“By Mr. O’Sullivan: I will admit that.”
At the outset we will state that, whilst it is true that the wife’s property cannot be legally pledged as sepurity for the payment of her husband’s debt, none the less, when it becomes evident that the intention was to set aside the protection which the wife may exercise against marital influence touching her paraphernal rights, she may, under certain circumstances, lose the protection accorded by law.
The plaintiff had the right to sell her property to her son. The note which the son issued to her was negotiated and represented the credit portion of the purchase price. To this point of the case plaintiff did not aver that there had been any illegality or irregularity.
The husband’s influence presents the question involved. We have not found in the testimony that he sought to influence plain *303 .tiff by resorting to methods reprobated by law; the record does not disclose that he attempted in any way to capture plaintiff’s judgment or to coerce her will in matter of signing the act. The sale and purchase was a voluntary act of the mother and son.
The promissory note. The plaintiff as holder of the promissary note knew, or should have known, that if it passed into the hands of third persons it might legally be held.
It is firmly imbedded in jurisprudence that a bona fide purchaser for a consideration before maturity is protected, at least, to the extent of the amount paid by him; the' note he holds is clear of all equities between the parties.
We shall not infer that, owing to the fact that the wife, plaintiff here, who was originally the person to whom it had been issued, is not bound because the husband pledged it. I-Ie treated it as his own; offered it to the defendant, and after the negotiation had the proceeds placed to the credit of the commercial firm of which he was a member.
The law has placed it within the power of the wife to take care of her paraphernal funds, but she is not entirely relieved of all care and responsibility in that regard; she also must be held to some responsibility, to some exertion on her part, in order that it may not pass out of her hands and become a snare to third persons.
This was substantially the view expressed in two cases of a comparatively recent date. Lester v. Sheriff, 46 La. Ann. 344, 15 South. 4; Colgin v. Courrege, 106 La. 691, 31 South. 144.
While this is substantially admitted by plaintiff, the contention is, on her part, that the mortgage itself with which the note is identified does not pass as a negotiable instrument. This is true to some extent, but it has been held repeatedly that the mortgage also is transferred if there is nothing to warn third persons against becoming its transferee.
The decisions quoted, supra, lead to the one inference that the note identified with the mortgage transfers the mortgage by which it is secured if there is nothing in either to place the holder on inquiry.
In this instance, also, as well as the case in the decisions cited, the deed was placed on record with the wife’s consent; she cannot recall it to the prejudice of the holder of the note and transferee of the mortgage.
Learned counsel for plaintiff cites several decisions, the first of which is Schmidt v. Frey, 8 Rob. 435; and, last, Equitable v. Talbert, 49 La. Ann. 1393, 22 South. 762, in which it was decided that the act of mortgage was not a negotiable instrument, and is subject to all the equities between the parties.
With reference to the latter, the security— the mortgage rather — there is a limit even in the cited decisions. The wife is not entirely protected against her weakness of which the transferee knew nothing.
It is evident there are two principles of law, one for which plaintiff contends; the other, the defendant. Under the former, protection is afforded the wife against marital influence in matter of her paraphernal property.
Where it is evident that the wife was the security of her husband, the public is then warned, and the transfer may become null in whatever hands it may fall. There are a number of decisions in which she has recovered her rights despite the fact that she had voluntarily contracted and consented to the transfer. She shall not be the security of her husband is the injunction of the law. Civ. Code,- art. 398.
The security to which we refer manifests the intention to become the security of her husband.
But in interpreting the cited article, it has been held that there is a difference between an act of mortgage to secure a debt *305 of the husband and an act of sale which the wife has made for the payment of his debts. 106 La. 691, 31 South. 144.
This is required by the necessity that ■there should be freedom in contract.
The wife can do as she pleases with the proceeds of a sale in case of a sale, and if she chooses to apply them to the payment of the debts of her husband, third persons are not to be made to lose thereby. This was the view expressed in the Courrege Case, cited ■supra. That case is very pertinent to the issues here; for the wife conferred upon the husband the ability to use the note in the manner before mentioned.
We have said above that there are two principles which present themselves in this ■case at this time.
We have stated the first; the other springs out of the necessity which the commercial law imposes on treating negotiable instruments before maturity as free of equities between the parties. The commercial instrument identified by the act by which it is secured gives character to the transfer and excludes the possibility of claiming it back because of some influence.
It must be remembered that this note is complete; nothing is to be added to it; so is also the sale. It may be unfortunate that by a fiction of the law immovable property may become, as it were, mobilized, and rights thereon'pass into third hands.
Under the commercial law, as now interpreted, it cannot be avoided. It may be that in the interest of the home and of the family the wife should be protected from her own weakness. If the law be deficient in this respect it is not for us to supply the omission. We interpret it as we find it.
The following decisions are in point; they strongly sustain the view that secret equities will not be of any avail against a bona fide holder of a note transferred before maturity, nor against a mortgage which secures its payment : Carpenter v. Allen, 16 La. Ann. 435; Gordon v. Maxwell, 27 La. Ann. 56; Taylor v. Bowles, 28 La. Ann. 294; Davis v. Greve, 32 La. Ann. 420.
The Supreme Court of the United States is equally as decided and direct upon the subject, as will be seen by consulting the following decisions: Carpenter v. Logan, 16 Wall. (U. S.) 271, 21 L. Ed. 313; Sawyer v. Prickett, 19 Wall. (U. S.) 146, 22 L. Ed. 105; and, lastly, the following from our own court is very clear upon the subject: Lester v. Connelly, 46 La. Ann. 340, 15 South. 4, and the Whitbeck Case, 47 La. Ann. 49, 16 South. 570.
This brings us to the second branch of the ease, springing out of the proposition that the note was not indorsed by the pledgor S. W. Clark, Sr.
The following is the text of the article invoked :
“A bill of exchange or promissory note by notarial act, although endorsed by the payee in bank, is not complete and binding as to third' persons without the indorsement of the pledgor if the instrument is negotiable.”
In the case before us there was an act of pledge signed by the pledgor. The act itself was drawn in the usual form; true, the note was not signed by him, but it formed part of the act which he signed.
The contention on the part of the learned counsel for plaintiff (urged in argument for the first time in this court; it was not pleaded at all, nor was it previously urged in the district court) is that the article in question has not been repealed, and to sustain his contention he cites Cater v. Merrell, 14 La. Ann. 376, and Sewell v. McNeill, 17 La. 185.
True, Act No. 157, p. 239, of 1900, specially repeals only certain articles stated; it does not include in words the article quoted above, but it does repeal it in effect.
It provides that negotiable notes may be transferred by delivery to the creditor without further formality.
As relates to negotiability, there is scant difference between a negotiable stock certif *307 icate and a promissory note. As to the -former, it has been held that it may be pledged by delivery. Mineral Water Mfg. Co. v. Deblieux, 40 La. Ann. 156, 3 South. 726.
In another case the pledge of bonds and stock was attacked. While it was not on grounds entirely similar to those here, it remains as a fact that the court held that the bonds were negotiable instruments and properly transferred by delivery. The court specially cited article 153 in pari materia.
We quote from this article:
“Provided also that whatever may be in the form of the act, it mentions the amount of the debt as well as the species and note of the claim given in pledge.” Civ. Code, art. 158.
The court interpreted this article, and arrived at a similar conclusion as before expressed in Smith v. Crescent City Live Stock Landing & Slaughter House Co., 30 La. Ann. 1379.
The first act having some pertinence is Act No. 287, p. 348, of 1855; and the last act upon the subject, that is, the act of I960, does not leave any good ground upon which to decide that the note, negotiable in form, should be signed by the pledgor.
We have arrived at the conclusion that the judgment is legal.
It is therefore ordered, adjudged, and decreed that the judgment is affirmed.