(121 So. 764)

No. 27825.

GAINES v. BONNABEL.

March 25, 1929.

F. Rivers Richardson, of New Orleans, for appellant.

Terriberry, Young, Rault & Carroll, of New Orleans, and C. A. Buchler, of Gretna, for appellee.

THOMPSON, J. The plaintiff is holder in due course and before maturity of five promissory notes executed by the defendant to his own order and indorsed by him in blank.

The several notes aggregate the sum of $38,180.05, were dated December 13, 1923, and due respectively in 2, 3, 4, 5, and 6 years after date. The notes were fully described in, and were identified by, the usual paraph of the notary, with an authentic act of mortgage bearing even date with the notes.

The act of mortgage contained the usual stipulations, including the stipulation that the failure to pay any one of the notes at its maturity would have the effect ipso facto of maturing all of the remaining unpaid notes.

The first of the series of notes, which was due one year after date, was not paid when due, whereupon the plaintiff brought this suit by ordinary process for a personal judgment for the entire amount represented by the five unmatured notes (the first one having been paid after maturity) and for recognition of the mortgage on the land described.

The defendant pleaded timely the exception of prematurity, which was sustained by the court and plaintiff's suit dismissed.

The theory upon which the exception of prematurity is founded is in effect that the stipulation is personal to the mortgagee, was not an accessory to the notes, and did not run with the notes in favor of the third holder. In other words, the contention amounts to this: That before a third holder of the notes can claim the benefit of the stipulation referred to, such third holder must have obtained a special assignment of the stipulation.

The position is somewhat unusual, and we may say without judicial precedent in this state.

It may be well to quote in full the stipulation with respect to the maturing of all of the notes on failure to pay any one of them at maturity:

"And the parties hereto agree and stipulate that failure to pay any one of the within described mortgage notes at its maturity, as herein stipulated, promptly at the respective maturities of each, then that fact shall ipso facto have the effect of maturing all of the said remaining unpaid notes as if they had reached their respective maturities and collection in full of all the said notes is authorized, together with all accrued interest and attorney fees."

Other stipulations contained in the act of mortgage which may be pertinent to the present inquiry are the following:

"The said Alfred E. Bonnabel declares that he does by these presents mortgage, affect and specially hypothecate in favor of the said F. Rivers Richardson (mortgagee) and to enure to the use and benefit of any and all holders or holder of the said notes, etc."

The mortgagor bound himself not to alienate or incumber the property to the prejudice of the mortgagee, to pay the fees of the attorney who may be employed to collect the notes, to keep the property insured against loss by fire, and to transfer the insurance to the mortgagee or to any other holder of the

notes; that in the event said notes, or any of them, not being punctually paid at maturity, it shall be lawful for and he does hereby authorize said mortgagee or any other holder or holders thereof to cause all and singular the mortgaged property to be sold by executory process without appraisement to the highest bidder, payable cash; that in the event the taxes are not paid, the mortgagee or any holder of the notes was authorized to pay the same, and finally it was declared:

"Now to secure the faithful performance of the foregoing obligations and the reimbursement and payment of said notes, lawyers fees and premiums of insurance as above specified, the mortgagor does further specially mortgage * * * or any other holder or holders of said notes."

It is true the clause of the mortgage last referred to with regard to the faithful performance of the obligations by the mortgagor in favor of any holder precedes the one relating to the maturity of the notes, but there can be no doubt whatever that when the terms of the mortgage are considered as a whole, it was the intention that all of the obligations and stipulations of the mortgage should run in favor and inure to the benefit of any future holder or holders of the notes.

The notes, as stated, were payable to the maker's own order and were indorsed in blank. They were negotiable by mere delivery, and it was in favor of the notes rather than any particular person or holder that the agreements, stipulations, and obligations were made.

The discussion so far has been upon the theory that the contract of mortgage itself gives to the third holder of the notes the right to claim the benefit of the stipulation in question as well as all other stipulations pertaining to the notes.

However, aside from this, we think the same is true as a matter of law. The notes were the principal obligation and the mortgage was the accessory. The notes were fully described in the act of mortgage and were identified therewith. When therefore the notes passed from the mortgagee to the plaintiff, such delivery and transfer included all of the accessory obligations, covenants, and stipulations contained in the act of mortgage.

The Code itself declares that the sale of a credit includes everything which is an accessory to the same; as suretyship, privileges, and mortgages. Article 2645.

The transfer of a note identified with a mortgage transfers the mortgage by which it is secured, if there is nothing in either to place the holder on inquiry. Clark v. Whitaker, 117 La. 298, 41 So. 580.

The accessory obligations follow a note payable to bearer or otherwise negotiable by mere delivery, the same as in case of indorsement or written assignment.

There is no law in this state which requires a mortgage note to be indorsed in order to transfer title. Griffin v. Cowan, 15 La. Ann. 487; Maddox v. Robbert, 165 La. 694, 115 So. 905.

If a mortgage is accessory to the note which it is intended to secure, then it must be such as a whole and cannot be divided as to its provisions and stipulations. In other words, it cannot be said that one stipulation, obligation, or agreement is an accessory and follows a transfer of the notes, while other stipulations, equally binding on the mortgagor, are not accessories and are personal to the mortgagee.

If the third holder of the notes is not entitled to claim the benefit of the stipulation in the mortgage as to the maturity of the notes on failure to pay any one at maturity, then such holder would not be entitled to the benefit of the pact of nonalienation, nor of the stipulation for attorney fees, nor of the stipulation as to insurance, payment of taxes, and the waiver of the benefit of appraise-

ment, all of which stipulations have been held to follow the notes into the hands of third persons and have never been questioned so far as we have been able to find.

If the contention of the defendant is adopted, then where is the line to be drawn between a stipulation in a mortgage that is an accessory and follows the note, and one that is personal to the mortgagee and does not follow the note? We confess that we are unable to mark out the line. The law has made no distinction, and we do not feel justified in attempting to make any. If we select the stipulation in question as personal to the mortgagee and does not follow the notes, then by the same reasoning we should hold that all other agreements and covenants in the mortgage are personal to the mortgagee, except the single clause granting the mortgage and hypothecation.

Such a conclusion cannot be justified in law or reason.

In the case of Smith v. Nettles, 13 La. Ann. 241, it was held that the pact of nonalienation, though in favor of the mortgagee alone, inures to any assignee of the mortgage notes; that the assignment of the notes carries with it the accessory obligations attached to the notes in the mortgage.

In Iberville Bank v. Dupuy, 139 La. 28, 71 So. 206, it was held that the sale or purchase of a credit must include everything which is accessory to the same, and where the plaintiff negotiated one of the secured notes under a mortgage, the note did not lose the benefit of a waiver of homestead executed in favor of the plaintiff by being transferred.

The court below based its decision on the case of First State Bank & Trust Co. v. Crain, 157 La. 428, 102 So. 513, 38 A. L. R. 347.

And that is the only authority cited in brief of counsel for defendant.

The notes in that case were simply marked in the upper left corner, "Rent Note." There was nothing on the notes to identify them with any lease contract nor to indicate that any such written contract was in existence.

There was a stipulation in the lease similar to the one here under consideration, but there was no plea of prematurity filed, and the question as to whether such a stipulation inured to the third holder of the notes was not made as a serious defense. The real defense against the notes was that they were not unconditional obligations and therefore were not negotiable and were subject to the equities between the maker of the notes and Bosco, a sublessee.

We held that the third holder of the notes was not a party to the lease, was not bound by the stipulations in the lease, and hence the notes were not by any such stipulations rendered nonnegotiable; that the mere taking of the written lease did not make plaintiff a party thereto, or thereby subject it to the equities between the maker and the payee of the notes. Of course, if the plaintiff in that case was not affected by the equities arising under the lease to which it had not become a party, it could not for the same reason claim the benefit of the stipulation maturing the notes on default of any one of them.

The plaintiff did recover, however, on the unmatured notes; but this was because the defendant had failed to interpose the proper plea.

We did say in that case that "the situation of holders of rent notes is perhaps somewhat analogous to that of holders of mortgage notes; and as transferees of a credit they may be entitled to such accessories as the suretyships, privileges, and mortgages by which the notes are secured."

It is quite clear, however, that the situation of the holder of the rent notes in the cited case was entirely different from that of the plaintiff in the instant case. A case might arise in which the situation of the

holder of rent notes could be likened to that of the holder of mortgage notes in some respects, but there is little or no similarity between the situation of the plaintiffs in the two cases. The cited case cannot therefore be held to apply to the present case.

Our conclusion is that the stipulation maturing all of the notes, on default of paying any one of them at maturity, formed a part of the mortgage as an accessory of and to the notes, that it attached to the debt represented by the notes, and remains attached thereto in the hands of the third holder or purchaser.

For the reasons stated the judgment is reversed, the plea of prematurity is overruled, and the case is remanded to be proceeded with according to law. The defendant to pay the costs of this appeal.