### NEWMAN v. O. K. INDUSTRIAL LIFE INS. CO.*

### No. 4339.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1932.

Edward Barnett, of Shreveport, for appellant.

*Rehearing denied July 14, 1932.

Irion & Switzer and C. B. Emery, all of Shreveport, for appellee.

DREW, J.

Plaintiff, alleging that he is the owner in due course before maturity of fifteen rent notes, for $15 each, instituted this suit praying for judgment against the maker in the sum of $225, with interest at the rate of 5 per cent. per annum from judicial demand until paid, and 10 per cent. attorney's fees on both principal and interest.

He alleged the notes were made payable to J. R. Patterson; that he purchased them from J. R. Patterson before maturity; that the notes were executed in connection with a certain rent contract, containing the stipulation that failure to pay any one of the notes when due matured all notes. He claims advantage of this acceleration clause, and alleged that the notes are past due.

Defendant denied all the material allegations of plaintiff's petition; denied that plaintiff owned the notes; and that, if he does own them, he took them subject to all equities and defenses that defendant had against the original payee, that plaintiff is not entitled to the advantage of the acceleration clause, and that, if he was ever entitled to this advantage, he has lost it by accepting the rent on several occasions after the due date, without objection.

The lower court rendered judgment in favor of plaintiff on three notes, aggregating the amount of $45, with interest thereon from December 1, 1931, until paid, together with 10 per cent. upon both principal and interest as attorney's fees.

Plaintiff has appealed from this judgment, and defendant has answered the appeal, praying that the judgment be amended by casting plaintiff for cost of suit and relieving defendant of all attorney's fees; and that, in all other respects, the judgment be affirmed.

The question of the ownership of the notes is no longer before us. Although attorney for defendant argues that the district court found that plaintiff was not the owner of the notes, we cannot reconcile this argument with the fact that the district court gave plaintiff judgment on three of the notes. Defendant did not appeal, and, in answer to the appeal, prayed that the judgment for the principal of the three notes be affirmed.

The defendant, an insurance company in Shreveport, desired to open a branch office in New Orleans. Through its president, it opened negotiations with J. R. Patterson, in New Orleans, to secure a lease on a certain building owned by Patterson. An agreement was reached whereby defendant was to have a twelve-month lease on certain premises in the city of New Orleans, for a monthly rental of $15. Patterson had prepared a lease contract in duplicate and twelve rent notes, which were forwarded to defendant to be executed. While in defendant's possession, the lease was signed and twenty-four rent notes were signed covering a period of twenty-four months. The term of the lease was changed from twelve months to twenty-four months. The original lease and copy, altered as to the term, together with the twenty-four notes, duly executed, were forwarded by defendant to Patterson, who signed the lease and returned the copy and lease to defendant.

The rent notes signed were made payable on February 1, 1931, and the first day of each month thereafter for twenty-four consecutive months. The notes that became due prior to November 1, 1931, were paid. The notes due November 1, 1931, and monthly thereafter, have not been paid. Plaintiff made written demand on defendant for payment of the November rent note, which was past due, and the remaining fourteen notes, claimed to be due under the accelerating clause in the lease, which provided that failure to pay any note on the due date would mature all the remaining notes. Prior to the filing of this suit, plaintiff came to Shreveport and made a personal demand on defendant for payment of the fifteen notes. Defendant contends that plaintiff is not the owner of the notes, and, if he is, he took them with due notice of the equities and defenses of defendant and after maturity.

Plaintiff testified that he purchased the notes by settlement of an account between him and Patterson and paid Patterson the difference of $85 by a check, on February 9, 1931, which canceled check he filed in evidence. Patterson corroborates the plaintiff, thereby disclaiming any interest in the notes. The notes are negotiable and were in plaintiff's possession, duly indorsed by the payee, Patterson. A judgment in favor of plaintiff in this suit will forever bar Patterson from claiming the notes, as against the defendant. The only interest, therefore, defendant could have is as to the time the notes were acquired by plaintiff, whether before maturity or after maturity, in order that it might make whatever defense against him as it could have made against Patterson. The district court allowed defendant to urge all defenses to the notes as it could have had Patterson been the plaintiff.

We might say here that it is apparent that defendant based its defense, in part, at least, upon a false foundation. It assumed that plaintiff was a lawyer and that Patterson was his client, and that plaintiff, as a lawyer, was attempting to collect the notes for his client. The record clearly shows that plaintiff is a retired business man of the Caucasian race; that he is not a lawyer and has never been; that he was not the agent for Patterson; and that Patterson and the offi-

cers of defendant company are all of the negro race.

The principal defense urged by defendant is that the lease contract was for only twelve months; that the lease and copy, when received by it from Patterson, read "12 months"; that there were twenty-four notes accompanying the lease contract; that, without counting the notes, the president of defendant company signed all twenty-four, thinking he was signing only twelve; that the original lease was returned to Patterson and the copy filed away; that, after the notes and lease had been signed, the president of defendant company gave them to his daughter, who was his stenographer, and that she discovered there were twenty-four notes, and the lease only called for twelve, and that she changed the lease and the copy without the knowledge or consent of her father; and that he knew nothing of the change in the lease made by his daughter, and did not know there were twenty-four notes until a few days before the filing of this suit, when informed by plaintiff.

■ The district court undoubtedly accepted this theory of the case in allowing judgment in favor of plaintiff on only three of the remaining notes of the first twelve. If he did, it was in error, as is clearly shown by the record. We dislike to disturb the finding of the lower court upon facts, but, when it is manifestly erroneous, as in this case, we will.

Patterson prepared the lease and duplicate in New Orleans. The lease called for a period of twelve months and described twelve rent notes. The character of type in the lease and twelve notes is the same. The daughter of the president of defendant company admits changing the lease and copy to read twenty-four months, instead of twelve. The character of type is entirely different from that used in preparing the lease and the first twelve notes, and the last twelve notes are filled out with the same character of type used by the president's daughter in changing the term of the lease. It is not difficult to see that the same typewriter was a typewriter with the identical same type, was used to prepare the last twelve notes, as was used to change the term of the lease and as was also used to sign the defendant company's name to the twenty-four notes. The notes were signed, "O. K. Industrial Life Insurance Company" in type, by "J. S. Williams, President," with pen and ink. The lease was also signed the same way and with the same character of type.

On January 31, 1931, defendant, by its president, wrote to Patterson acknowledging receipt of the blank notes and lease contract on January 29, 1931, and ended the letter as follows: "Enclosed contracts are being returned for proper endorsement. Please let

our department have duplicate copy at your earliest convenience."

On February 2, 1931, Patterson wrote to defendant, wherein he said: "Lease copy of said lease is being returned to you signed." It is also shown by the testimony of Patterson that he sent to defendant the lease contract for a term of twelve months, accompanied by twelve notes; and that, after defendant had signed the lease and notes, it returned to him the lease and copy, which had been changed to make the term read twenty-four months, and accompanying it were twenty-four rent notes, properly executed; that he signed the lease and copy and returned the copy to defendant in letter of February 2, 1931.

It would be unnatural for the president of defendant company, who apparently was in charge of the office, not to have looked at the copy of the lease that was mailed to him by Patterson, before the same was filed away. The letter written by the president to Patterson and the reply, which are quoted from above, convicts the president of defendant company of error, or false swearing. It is also beyond our power to believe that his daughter would change the term of the lease without consulting her father. The president also swears that he had no knowledge of there being twenty-four notes until a few days before the filing of the suit.

The record discloses copies of letters written by plaintiff to defendant, of dates April 7, 1931, and June 2, 1931, were sent by registered mail and receipted for by N. Williams, in which plaintiff demanded payment of $330, the balance due on the twenty-four notes; the other letter, sent by special delivery, demanded $300, balance due on the twenty-four notes. The proof shows the letters to have been mailed, and there is no denial of their having been received by defendant's president.

It is suggested by counsel for defendant that the additional twelve notes could have been made in the branch office of defendant at New Orleans, and that the branch office used the same character of type as used in defendant's office in Shreveport. There is no evidence to show that the notes were ever in the branch office in New Orleans or that the kind of type was used there. In fact, there is no testimony in the record that a branch office was in existence in New Orleans until after the notes were executed in the main office in Shreveport, on January 29, 1931. The letter of February 2, 1931. to defendant by plaintiff recites that "your office force moved in early this morning." This is the first and only evidence regarding the existence of a branch office in New Orleans.

■ The record convinces us, beyond any doubt, that the term of lease was changed in the office of defendant in Shreveport, and the twelve additional notes were prepared and

executed there at the same time, with the knowledge of defendant's president and in accordance with his instructions. His theory that he signed the twenty-four notes, thinking that he was only signing twelve, is as ridiculous as the remainder of his testimony. Each of the notes was numbered on its face, beginning with No. 1 and continuing to No. 24. It would be unreasonable to believe that he did not see the numbers or that he would not have discovered the difference in signing twenty-four notes, instead of twelve. There is not only no merit to this contention of defendant, but the record, we think, is filled with sufficient evidence to show that J. S. Williams, the president of defendant company, is very forgetful or else has willfully attempted to mislead the court for his personal gain.

██ Defendant contends that plaintiff is not entitled to the advantage of the acceleration clause, as that clause was personal to Patterson, the lessor. The contention is not well founded, under the decision in the case of Gaines v. Bonnabel, 168 La. 262, 121 So. 764, 766. The remaining question is whether the accelerating clause has been waived by the acceptance of rent, after the due date of the notes.

The record discloses that the February, 1931, and March, 1931, rent notes were paid on February 27, 1931, and the rent for April and May, 1931, was paid on April 8, 1931, and the July rent was paid on July 2d. The record also discloses that plaintiff was continuously protesting to defendant for its failure to pay, in accordance with the contract of lease.

On April 7, 1931, plaintiff, by letter, demanded of defendant the payment of $330, balance due under rent contract, because of failure to pay the April rent note on due date. On June 2, 1931, plaintiff wrote to defendant, in part, as follows: "This is to advise you that your rent note due June 1, 1931, in the sum of $15.00, was not paid at maturity, and your negligence in not providing for its prompt payment under your lease makes the balance due, 20 rent notes of $15.00, totally $300.00, mature at one time. * * * "

He then made demand for the balance due under the contract and threatened suit if the entire amount was not paid by June 8, 1931. On June 27, 1931, plaintiff notified defendant by letter that his note for $15 would be due on July 1, 1931, and that he expected payment on that date. On October 29, 1931, plaintiff forwarded to defendant a letter reading as follows: "Your note for rent in the sum of $15.00 will be due and payable at my office on the 1st day of November, 1931, and I caution you again to be prompt."

On November 4, 1931, plaintiff wrote to defendant as follows: "Your rent note in the sum of $15.00, not having been paid at maturity, although I advised you of its maturity on the 29th ult., I now demand the full payment of all and every rent note, fifteen in total, of $15.00 each, within forty-eight hours, otherwise action will be taken. This is final."

It is clear that plaintiff did not accept payment of past-due rent after maturity date, without strenuously protesting and objecting.

The courts have held that, where a lessor month after month, without objection or protest, accepts the rental a few days after maturity of the notes, he cannot, without previous notice to his tenant, claim forfeiture of the lease or the benefit of the acceleration clause in the lease. The basis of this ruling is that the lessor must not by his actions lull the lessee into a state of thinking he is secure, for the purpose of taking advantage of him. The punctuality required of the lessee in the payment of his rent has been designed solely for the protection of the lessor, and cannot be allowed to be converted in his hands into a means of entrapping and oppressing the lessee.

The principle is sound, but the facts in this case relieve plaintiff from the application of that rule. Plaintiff not only objected to the late payments of the note by defendant, but constantly reminded defendant that he expected him to pay on the date of maturity, and also notified defendant exactly when the maturity date was, and urged his promptness in making his payments at maturity. Defendant was regularly reminded by plaintiff of the accelerating clause in the lease, and threatened to take advantage of it.

Plaintiff is entitled to the advantage of the accelerating clause, and, when defendant failed to pay the rent note maturing November 1, 1931, after notice from plaintiff that he expected prompt payment, under the accelerating clause in the lease the remaining fourteen notes became due and exigible.

Our finding makes it unnecessary to discuss the effort of defendant to pay the notes due November 1, 1931, and December 1, 1931, after that time, which is urged by defendant in an effort to escape payment of costs and attorney's fees.

The judgment of the lower court will have to be amended. It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by increasing the amount of judgment in favor of plaintiff from $45 to $225, and fixing the interest thereon at 5 per cent. per annum from judicial demand until paid (the interest was not fixed by the lower court); and, in all other respects, the judgment is affirmed.