284 So.2d 130 (1973)
Mary Emma Key TORREY, Plaintiff-Appellee,
v.
SIMON-TORREY, INC., Defendant-Appellant.
No. 4285.
Court of Appeal of Louisiana, Third Circuit.
September 18, 1973.
Rehearings Denied November 1, 1973.
Writ Granted December 19, 1973.
*131 Leon E. Roy, Jr., New Iberia, and C. Ellis Henican, New Orleans, for defendant-appellant.
Landry, Watkins, Cousin & Bonin, by William O. Bonin, New Iberia, for plaintiff-appellee.
Before FRUGÉ, SAVOY, and DOMENGEAUX, JJ.
FRUGÉ, Judge.
Plaintiff, Mary Emma Key Torrey, as surviving spouse in community of John Torrey, brought an action of foreclosure by executory process against property owned by Simon-Torrey, Inc., subsequently renamed R.V.C., Inc. Such action was predicated upon an asserted failure to pay in full amounts due on eight vendor's lien and special mortgage promissory notes. Executory process was ordered by the trial court, and property of the debtor securing the notes was seized under writ of fi fa. Simon-Torrey, Inc., then petitioned for an injunction to arrest the seizure and sale of its property. It was granted a temporary restraining order and a rule nisi was issued to plaintiff to show cause why a preliminary injunction in the substance and form of a temporary restraining order should not issue.
*132 A subsequent plea of estoppel was also asserted by Simon-Torrey, Inc. R.V.C., Inc., subsequently petitioned for a declaratory judgment adjudging the complete discharge and extinguishment of said notes by tender and deposit of $4,555.20 into the registry of the court. Such tendered amount was founded upon an alleged reduction or remission of the debt owed and represented by the promissory notes. An exception of lis pendens was raised thereto by plaintiff, and all contentions asserted in the petition for declaratory judgment were settled by the adjudication of the first action commenced.
The trial court rendered judgment in favor of plaintiff, Mrs. Torrey, on four of the said notes (being Nos. 22, 26, 30, 34), but granted a preliminary injunction in favor of defendant in regard to the four other notes (being Nos. 38, 42, 46, 50) based on a finding of prematurity of the debt represented by these latter notes.
Defendant, R.V.C., Inc., formerly Simon-Torrey, Inc., suspensively appealed from the lower court's determination of an absence of a valid remission of the debt and from its enforcement by executory process of the promissory notes (excluding Nos. 38, 42, 46, 50) for both principal and interest. Defendant-appellant also asserted a plea of prescription in regard to Note 22 and likewise appealed the lower court's denial of the special plea of estoppel.
A complete review of the entire record of the court below has resulted in an affirmance in part and a reversal and amendment in part. The lower court judgment is affirmed in respect to the notes found enforceable (excepting Note 22 which has prescribed) and amended to permit the present enforcement of Notes 38, 42, 46, 50 previously held unenforceable.
Pertinent facts and circumstances relied upon in reaching a final determination are set out in the following. Plaintiff's deceased husband, John Torrey, and one Warren M. Simon were longtime friends and partners in a creamery business. The business initially was known as Pelican Creamery, Inc., and was changed to the status of a partnership known as Simon-Torrey for tax purposes. This partnership was again altered by the organization of a corporation known as Simon-Torrey, Inc. (later renamed R.V.C., Inc.).
On October 1, 1955, the partnership, comprised of Torrey and Simon, transferred partnership property (this same property being subjected to the foreclosure proceedings in the instant suit) to the newly formed corporation, Simon-Torrey, Inc. This transfer, by credit sale of its assets to Simon-Torrey, Inc., was made for a recited consideration of $256,746.71. The consideration, therefore, was represented in part by 50 promissory notes. Torrey himself received 25 even-numbered notes, while Simon received 25 odd-numbered notes. The notes held by Torrey were in the face amount of $1,819.40 each, bearing interest at the rate of 5% per annum from date until paid; those of Simon were in the amount of $7,277.60 each, bearing interest at the same aforestated rate. These notes were secured by special mortgage and vendor's lien on the property foreclosed upon in the instant case.
At the time of Mr. Torrey's death, the plaintiff, Mrs. Torrey, as surviving spouse in community, became the owner and holder of one-half of the notes held by him at the time of his death (said total consisting of sixteen (16) notes). The conflict requiring resolution arises out of the following claims asserted by the parties litigant.
The plaintiff, Mrs. Torrey, claimed the total principal amount of the eight notes sued upon, being $14,555.20 with interest at 5% per annum from October 1, 1955, plus attorney's fees. The defendant, on the other hand, seeks to enjoin the executory proceedings to collect such aforesaid amount, under the contention that the entire debt was extinguished by the tender of $4,555.20 made by defendant to plaintiff.
The main issue concerns what amount is validly due on the notes held by the plaintiff *133 and for which demand has been made for payment. In order to resolve this question, a crucial determination must be made. It is asserted by the learned counsel for the Simon-Torrey corporation that a remission of its debt was effected by both Mr. Torrey and Mr. Simon. Such remission was alleged to have been derived by reason of a tax settlement with the Internal Revenue Service. This tax settlement was itself a direct consequence of the credit-sale transfer by the two partners to the corporation heretofore set out. The Internal Revenue Service arrived at a compromise with the former partners and conditioned recognition of the corporation, for tax purposes, upon compliance with the following. The purchase price given for the assets transferred from the partners to the corporation was required to be reduced by the sum of $100,000.00, and this amount was to be deducted from the face value of the notes held by Simon and Torrey.
Subsequently, an appropriate adjustment was made on the books of the corporation to reflect the alleged compromise. Also pertinent was the refusal of the I.R.S. to recognize a deduction to the corporation of interest paid on the notes more than 75 days after the end of its fiscal period. Since Simon and Torrey would have borne a double tax otherwise, they agreed to remit all interest due on the notes.
At the time of the aforesaid price reduction, the notes held by Torrey were reduced by agreement of the parties from $45,485.00 to $25,485.00. However, nothing was written on the notes themselves nor any written agreement made by which an alteration of the debt due could be shown. It is noted that at the time of Torrey's death, he had been paid the full face value of nine notes in the amount of $16,374.60. Therefore, the reduced value of the 16 remaining notes was $9,110.40. By reason of this reduction in the value of the notes and because of an alleged overpayment made on the first nine notes (these having been paid for the full face value thereof), Simon-Torrey, Inc., asserted that the balance due to Mrs. Torrey was $4,555.20, being the amount actually tendered. The amount of the tender itself was computed on the basis of the devalued amount of each note, which was $1,119.48. Also excluded from the computation of the sum tendered was the amount of interest owed upon these notes.
By means of a most thorough and well-written brief, the debtor, Simon-Torrey, Inc., has sought to demonstrate to this court that, in fact, a remission was effected as a result of the sale of the partnership property to the corporation and the subsequent tax settlement with the Internal Revenue Service. By his learned argument, the counsel for Simon-Torrey, Inc., has sought to escape the exclusionary rule established by Civil Code Article 2276, which states:
"Neither shall parol evidence be admitted against or beyond what is contained in the Acts, nor on what may have been said before, or at the time of making them, or since."
Said counsel has presented a learned dissertation upon the application of the doctrine of remission. However, this court has concluded that the facts of this case preclude the applicability of this doctrine, as a remission was at no time intended by either of the parties. Plaintiff's proof on this issue fell short of supporting the relief desired. A remission is defined as a release or extinguishment of a debt and is not a mere reduction of the sale price. Therefore, cases cited as determinative of the issues here presented are not held by this court to aid in the resolution of the actual problem presented.
It is apparent to this court that at no time during their deliberations in regard to the tax settlement (it being of supreme importance to them), did the partners, Torrey and Simon, ever intend the complete or partial release (remission) of the debt incurred by the corporation in its acquisition of the partnership's assets. It was intended *134 that each of the parties would suffer a proportionate reduction (predicated upon each partner's actual ownership in the corporation) in the amount made payable to them. Such reduction would be in accord with the reduced amount of the new purchase price agreed upon. It is manifest to this court that such a reduction was contemplated but was, unfortunately, not guaranteed by a written agreement.
Pertinent articles to the consideration of the important issue here presented are Civil Code Articles 2275 and 2276. Article 2275 provides that "every transfer of immovable property must be in writing," and Article 2276 provides that parol evidence shall not be admitted "against or beyond what is contained in the acts, nor on what may have been said before or at the time of making them, or since."
The relief desired by the defendant in this suit can only occur by reason of the permitted introduction of parol evidence to vary the terms of the written agreement of October 1, 1955. This court is not oblivious of the fact that the parol evidence rule does not prevent proof of a subsequent verbal agreement modifying a prior written agreement. However, this is not the case if the prior agreement was one which by law must be reduced to writing. Corroborative of this point was the statement of the court in the case of In re Industrial Homestead Ass'n., 198 So. 528, at page 530:
"We readily concede that it is well established that parol evidence is inadmissible to vary, contradict, or add to a written contract (Revised Civil Code, art. 2276), and that, though this rule does not, where any ordinary contract is concerned, prevent the introduction of parol testimony to prove a subsequent verbal agreement, it does prevent the introduction of such testimony if the contract is one which is required to be in writing. This has been recognized in many cases and is clearly stated in Conklin v. Caffall et ux., 189 La. 301, 179 So. 434, in Salley v. Louviere, 183 La. 92, 162 So. 811, and in Barchus v. Johnson, 151 La. 985, 92 So. 566."
This court concludes that the trial court in its discretion allowed the admission of parol evidence burdened with the objection of plaintiff's counsel, in order that it might serve to show a possible renunciation or remission of a portion or all of the debts sued upon. However, after so doing, the lower court was evidently not impressed with the parol evidence, which he had permitted, to the extent necessary to support a remission.
It is noted that the availability of relief to the defendant was predicated upon his establishment of a remission in fact, as a reduction (as pointed out above) would have required a written agreement. However, it is most apparent from all the evidence presented that no remission was in any way or at any time intended.
Appellant's plea of prescription as to note twenty-two (22) is well taken. This note was issued October 1, 1955, and made payable "on or before eleven years after date." The note matured on October 1, 1966, and the prescription of five years commenced to run against the note from that date (C.C. Art. 3540). Relevant evidence in regard to this issue was derived from two of several letters entered into the record by a stipulation between the parties. The stipulation accepted all of these letters to be authentic.
The availability of prescription is based upon two of these letters and their contents. In the letter dated December 2, 1966, appellant's attorney made tender of an amount, he felt was due, on note twenty-two (22). The only other tender made in an attempt to discharge the indebtedness represented by said note was in the letter dated September 27, 1972. The terms of this letter tendered payment in discharge of all eight notes at issue in this proceeding (being Nos. 22, 26, 30, 34, 38, 42, 46, and 50).
*135 The aforestated information, when considered in respect to the applicable law, requires that prescription hereby result. Under Civil Code Article 3540 the note was to prescribe five years from its maturity date (October 1, 1966). However, the tender made by letter of December 2, 1966, served as an acknowledgment of the debt and thereby interrupted the running of prescription. This principle was aptly stated by the following excerpt from Brock, Bank Com'r. v. Sharkey et al., 191 So. 137, 138 (La.App. 1st Cir. 1939):
"The maturity date fixes the period at which the note begins to become extinguished by prescription and a special acknowledgment is required on the part of the maker in order to revive it. If he gives such an acknowledgment or authority to pay, then new life is infused in the note which lasts five years more from the date on which it is given."
The tender, by letter of December 2, 1966, therefore, infused new life into the note which lasted until December 2, 1971, when the note prescribed. The tender of payment by letter of September 27, 1972, was without avail as can be readily seen by a reading of the following jurisprudence. In Beatty v. Vining, 147 So.2d 37, 42 (La. App. 2nd Cir. 1962), the following was said:
"There was no written acknowledgment or promise to pay so as to take the debt out of prescription already accrued, as required by the provisions of LSA-C.C. Art. 2278.
It has been held that
"* * * a mere acknowledgment is not sufficient for the purpose (to renounce an acquired prescription), even if accompanied by payment on account of the debt. There must be a new promise made to pay the debt in order to nullify an accrued prescription. * * *' (Parentheses and emphasis supplied.) Burdin v. Burdin, 171 La. 7, 129 So. 651, 655.
See, also: Succession of Slaughter, 108 La. 492, 32 So. 379, 58 L.R.A. 408; Sullivan v. St. Anna's Chapel, 168 La. 383, 122 So. 118; Hobson v. Edelston, La. App.Orleans, 1943, 13 So.2d 141, 143-144; Glass v. Holoman, La.App. 2nd Cir., 1940, 197 So. 438 (writs denied)."
In Succession of Brower v. State, 80 So.2d 217, 221, 222 (La.App. 2nd Cir. 1955), the court stated the following:
"Counsel for the State point to certain articles of the LSA-Civil Code which have application to a renunciation of prescription. Article 3460 provides that it is lawful to renounce prescription when once acquired and Article 3461 declares that the renunciation may be either express or tacit. These articles have been repeatedly construed by the courts. It is clear that renunciation of prescription only takes place when the intention to renounce the prescription is manifest either from the words or the acts of the debtor. Such an acknowledgment must be clear, direct and absolute. See H. J. Cottam & Co., Inc. v. Raphael, La.App.1940, 198 So. 513."
From the foregoing it is concluded that the letter of December 2, 1966, did serve as a valid acknowledgment of the debt represented by the note numbered twenty-two. This acknowledgment did infuse new life into the note until December 2, 1971, when the note was extinguished by the running of the prescription of five years. There was never an effective renunciation of the prescriptive period by the defendant debtor; therefore, note twenty-two is no longer enforceable. It is noted that the case of James W. Whitworth v. William Ferguson, 18 La.Ann. 602, is inapposite to the instant case.
The defendant-debtor attempted by an alternative plea of estoppel to preclude the creditor's collection of the full face value of the notes plus interest. This contention was denied by the trial court, and we conclude that the trial court correctly did so. It is apparent that evidence incompetent *136 to establish an agreement to vary the provisions of a sale of land is, likewise, incompetent to establish an argument that one is estopped from denying that the terms of the sale have been changed by verbal agreement. To allow the defendant to do indirectly what he cannot do legally and directly, would fly in the face of the established law. However, the established law of our state causes an injustice in this case. It is apparent that the actual intention of the parties was to effect a reduction in the amount of the purchase price to be received by each. There was a failure to cause a writing varying the terms of the prior written act of sale, and the parties are bound by that omission. Therefore, this court is powerless to prevent the unjust enrichment of Mrs. Torrey and the concurrent and unintended loss to the other stockholders, Mr. Simon and Mrs. Nell S. Flynn.
The evidence presented by Simon-Torrey simply does not support a remission by Torrey and the trial judge so found, stating:
"* * * However, it does not in and of itself reflect an actual remission of that debt by Mr. Torrey, who is now deceased; and standing alone in my judgment, it does not constitute such a remission as would warrant this Court in making a specific finding that subsequent to the execution of the note and the delivery of the same to John Torrey that he actually agreed to renounce or remit a portion of the debt due him as evidenced by these notes.
"On the other hand and to the contrary, the evidence clearly shows that such notes as were paid to Mr. Torrey following this agreement with the I.R.S., the amount paid was the exact principal amount shown to be due on the note, although except for one noteNote Number Twothere was no interest payment made.
"In addition to this fact, there was introduced in evidence several memoranda written by Mr. Simon, the president of the defendant corporation, all of which were written subsequent to the death of Mr. Torrey, which occurred in 1966; which memoranda clearly indicates that at least as of that date subsequent to the death of Mr. Torrey, both parties understood that the value of the notes had not been reduced."
In regard to this court's amendment of the holding of the lower court, in regard to the absence of an acceleration clause in either the credit sale or the promissory notes paraphed thereto, this court has relied upon the holding of Gaines v. Bonnabel, 168 La. 262, 121 So. 764, at page 765, in which the following statement was made:
"However, aside from this, we think the same is true as a matter of law. The notes were the principal obligation and the mortgage was the accessory. The notes were fully described in the act of mortgage and were identified therewith. When therefore the notes passed from the mortgagee to the plaintiff, such delivery and transfer included all of the accessory obligations, covenants, and stipulations contained in the act of mortgage."
Therefore, it is manifest that the note itself need not specifically contain an acceleration clause in itself or make reference to such in the accessorial mortgage to which it is paraphed. The inclusion of the acceleration clause in the mortgage alone fully suffices. This court, therefore, concludes that the credit sale did contain an acceleration clause, and all notes at issue (except note twenty-two) in this case were correspondingly accelerated by non-payment (a breach of one of the covenants upon which acceleration was conditioned).
For the above and foregoing reasons, the judgment of the lower court is affirmed in regard to its determination of the enforceability of notes numbered 26, 30 and 34, but reversed and amended to allow the enforcement of notes numbered 38, 42, 46 *137 and 50. The enforcement of note 22 is disallowed, it being prescribed and, therefore, rendered unenforceable. Appellants to pay all costs of this appeal.
Affirmed in part; reversed in part.